**NEW ORLEANS ELECTRICAL
PENSION FUND**

v.

**Barbara Knight DeROCHA, Anna Kuhn
DeRocha Barnett, Ronald DeRocha,
Sr., Gary S. DeRocha, Kenneth DeRo-
cha, Rhonda DeRocha McDonald, and
Bryan DeRocha.**

Civ. A. No. 90–1934.

United States District Court,
E.D. Louisiana.

Dec. 17, 1991.

Marie Healey, Sarah Hall Voigt, Marie
Healey & Associates, A.P.L.C., New Or-
leans, La., for New Orleans Elec. Pension
Fund.

Thomas E. Dunn, Dunn Law Firm, Me-
tairie, La., for Barbara Knight DeRocha.

William J. Oberhelman, Jr., New Or-
leans, La., for Anna Kuhn DeRocha Bar-
nett.

Thomas Aquinas Kehoe, Harahan, La., John Wensles Parra, Jr., Metairie, La., for Ronald DeRocha, Sr., Gary S. DeRocha, Kenneth DeRocha, Rhonda DeRocha McDonald and Bryan DeRocha.

## MEMORANDUM AND ORDER

ARCENEAUX, District Judge.

This suit involves a controversy over benefits due under the terms of the New Orleans Electrical Pension Plan (the "Plan"). The parties have stipulated to most of the relevant facts and the law and now seek a determination as to the proper distribution of such benefits. Having reviewed the memoranda, the facts, and the applicable law, the court now rules.

## STIPULATED FACTS AND LAW

Plaintiff, the New Orleans Electrical Pension Fund (the "Fund"), filed this action on May 30, 1990, seeking a determination of the party, or parties, to whom the Fund must distribute certain pension benefits. The Fund alleges jurisdiction under sections 502(a)(1)(B) and (a)(3)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829 (1974) (codified as amended at 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3)(B) (Supp. I 1989)), and Rule 22(1) of the Federal Rules of Civil Procedure.

The parties have stipulated to the following facts and law.[1] The Plan is a jointly-administered, multi-employer benefit plan established and administered pursuant to ERISA. Ronald DeRocha, Jr. was a participant in the pension plan, which provides retirement benefits for employees of electrical employers working in the New Orleans area. These employers must be a signatory to collective bargaining agreements with Local 130 of the International Brotherhood of Electrical Workers, the Fund's sponsoring union, for their employees to be covered by the Plan.

Mr. DeRocha died on October 18, 1985, as the result of a gunshot wound to the abdomen. Mr. DeRocha was survived by the defendants herein: Barbara Knight DeRocha, his wife; Ronald DeRocha, Sr., his father; Gary S. DeRocha, Kenneth DeRocha, Bryan DeRocha, and Rhonda DeRocha McDonald, his siblings; and Anna Kuhn DeRocha, his ex-spouse and named beneficiary to his spousal death benefit. Mr. DeRocha had been married to Barbara Knight DeRocha for more than one year at the time of his death.

Barbara Knight DeRocha pleaded guilty to the charge of manslaughter of her husband on January 16, 1986. The Twenty–Fourth Judicial District Court, Parish of Jefferson, State of Louisiana, sentenced Barbara Knight DeRocha to ten years hard labor but ordered the sentence suspended and placed her on active probation for five years.

The Twenty–Fourth Judicial District Court also entered a judgment on May 26, 1987, in the case of *DeRocha v. DeRocha*, No. 333–287, declaring Barbara Knight DeRocha an unworthy heir of Ronald DeRocha, Jr., pursuant to article 966 of the Louisiana Civil Code.

Mr. DeRocha, the decedent, was a participant in the Plan from 1970 until the week ending October 22, 1985. He had accumulated 16.26 years of Future Service Credit at the time of his death.[2] While he had not retired at the time of his death, his retirement benefits had fully vested.

1. Defendants, Ronald DeRocha, Sr., Gary S. DeRocha, Kenneth DeRocha, Rhonda DeRocha McDonald, and Bryan DeRocha, filed a Notice of Agreement To and Objections of Facts on March 25, 1991. This "notice" contained objections to paragraphs 16 through 18, 20 through 22, 26 through 27, and 30 of the stipulation filed by the parties. Counsel apparently disagreed with this stipulation "where documents or statutes were involved or where the stipulation appeared to be conclusory." Record 25, at 2. The court, in an order dated July 23, 1991, directed the parties to agree (to the extent they could) and file an original of the stipulation into the record, or it would be necessary to hold a trial on the merits. All counsel signed the stipulation of facts and law filed into the record on August 5, 1991. The court, therefore, now finds that any objections to this stipulation have been withdrawn.

2. The Plan computes years of service by crediting a participant with an hour of service for each hour paid as an employee.

Congress, in 1984, enacted the Retirement Equity Act (the "REA"), 98 Stat. 1426 (1984), which broadened the rights of participants' spouses under ERISA. *See* 29 U.S.C. § 1055 (Supp. I 1989). The REA requires all employee benefit plans to provide automatic survivor benefits either in the form of a qualified preretirement survivor annuity (a "QPSA") or some equivalent form to a vested participant's surviving spouse in the event the participant dies prior to retirement.

The QPSA provisions, as imposed by section 203(b) of the REA, are applicable to any participant who performed at least one hour of service under a benefit plan on or after August 20, 1984. Ronald DeRocha, Jr. last worked in covered plan employment and accrued service until the week ending October 22, 1985.

Section 303(c)(2) of the REA provides a transitional rule for plan participants who died on or after August 22, 1984, the date of the statute's enactment. In particular, this section states that, if a participant,

(1) had at least 1 hour of service under the plan on or after the date of the enactment of this Act or has at least 1 hour of paid leave on or after such date of enactment,

(2) died before the annuity starting date, and

(3) died on or after the date of enactment of this Act and before the first day of the first plan year to which the amendments made by this Act apply,

then the QPSA provisions, and all amendments to the REA apply to the participant, even though the plan document in effect at the time of death did not specifically address them.

Section 401(a)(11) of the Internal Revenue Code (the "Code"), 26 U.S.C. § 401(a)(11) (Supp. I 1989), and section 205 of ERISA, 29 U.S.C. § 1055 (Supp. I 1989), also require the payment of a QPSA for a fund to qualify under the Code and ERISA as a benefit plan. The Code provides that,

(A) In general.—In the case of any plan to which this paragraph applies ... a trust forming part of such plan shall not constitute a qualified trust under this section unless—

\* \* \* \* \* \*

(ii) in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity is provided to the surviving spouse of such participant.

26 U.S.C. § 401(a)(11)(A)(ii) (Supp. I 1989). Thus, the Code, when read in conjunction with section 205 of ERISA, would seem to entitle Barbara Knight DeRocha, Mr. DeRocha's surviving spouse, to a QPSA.

The QPSA would commence upon the earliest date upon which the decedent would have been eligible to retire. *Id.;* 29 U.S.C. § 1055(e) (Supp. I 1989). In this case, Mr. DeRocha would have been eligible for retirement on November 1, 2012, the date on which the decedent would have attained the age of sixty years and the Plan's Early Retirement Age. The QPSA payable based on the joint lives of Ronald DeRocha, Jr. and Barbara Knight DeRocha, who was born in September 1949, would be $106.04 per month.

The Board of Trustees of the New Orleans Electrical Pension and Retirement Plan held a meeting on November 28, 1984, which, in part addressed the QPSA. The minutes of this meeting reflect in pertinent part:

The Actuary advised the administrator that effective January 1, 1985, a spousal consent for waiver of the surviving spouse coverage is required. The joint and survivor option will be automatic unless waived. In the event the participant rejects the option, it must be witnessed by the spouse. Mr. Cazaubon presented the Board a checklist of changes required by recent legislation and amendments (a copy is attached and made part of these minutes).

Mr. Appel motioned that the joint and survivor option be put into effect on January 1, 1985, upon the attorney's approval of the rules and regulations. He further motioned that the administrator be instructed to notify all eligible participants of this new option as per the Actu-

ary's language. The motion was seconded by Mr. Sahm and passed.[3]

The Fund, therefore, set forth specific requirements to comply with applicable federal law governing the QPSA and for a surviving spouse to waive rights to such benefit. Defendant Barbara Knight DeRocha has not filed her consent with the Fund to payment of the Plan's death benefit to any other person or entity. She also has not advised the Fund that she agrees to waive her right to receive the QPSA guaranteed to her by the Retirement Equity Act.

Section 5.4 of the Plan (entitled "Death Benefits"), however, would apply if the court should find Barbara Knight DeRocha to be ineligible to receive the QPSA. Section 5.4 provides that the person or persons designated as beneficiaries by a participant who dies before retirement shall receive the payment of a death benefit computed under the provisions of section 6.4. If the deceased participant had not filed a designation of a named beneficiary with the Fund prior to death, any death benefits payable under section 6.4 would be payable by the Fund to the participant's estate. Mr. DeRocha, however, filed a written designation of Anna Kuhn DeRocha Barnett, his ex-spouse, as his beneficiary to receive any benefit payable upon his death.[4]

The death benefit under section 5.4 is payable to the participant's named beneficiary measured by the contributions submitted on the participant's behalf and his years of service. This death benefit, unlike the QPSA, would commence on the first of the month following the death of the participant. If Anna Kuhn DeRocha Barnett were to receive such benefit, its effective date would be December 1, 1985. Based on 16.26 years of service, a lump sum payment of $3,000.00 would be payable, and the death benefit also would include an annuity in the amount of $100.00 per month for a period of sixty months thereafter. Thus, the total benefit payable would be $9,000.00.

The Fund has requested that defendants, Ronald DeRocha, Sr., Rhonda DeRocha McDonald, Bryan DeRocha, Kenneth DeRocha, and Gary DeRocha, relinquish any rights to receive death benefits under the Plan they may have under the Louisiana state court judgment that found Barbara Knight DeRocha an unworthy heir. These defendants, however, have refused and continue to assert their entitlement to the benefits. Similarly, Barbara Knight DeRocha continues to assert her right to the QPSA, and Anna Kuhn DeRocha Barnett continues to assert her right to any benefits she may be entitled to as the designated beneficiary. The court now turns to the merits of the arguments.

### JURISDICTION

The court has extensively considered its jurisdiction to entertain this matter. Having reviewed the memoranda submitted by the parties, the court finds jurisdiction to be proper.

Section 502(a)(1)(B) of ERISA states that,

A civil action may be brought—

(1) by a participant or beneficiary—

\* \* \* \* \* \*

(B) to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B) (Supp. I 1989). Because the Fund is not a participant or beneficiary of the pension plan at issue, the court questions whether jurisdiction is properly alleged under this section. Section 502(a)(3)(B), however, provides that "a participant, beneficiary, or *fiduciary*, [may bring a civil action] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to en-

---

**3.** *See infra* Appendix A for a relevant portion of the checklist attached to the meeting's minutes.

**4.** Mr. DeRocha apparently designated Anna Kuhn DeRocha Barnett as his beneficiary during their marriage. The evidence presented to

the court indicates that they married on June 6, 1975, and divorced on October 5, 1979. The decedent did not change the named beneficiary prior to his death.

force any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (Supp. I 1989) (emphasis added). Plaintiff filed this action for equitable relief and as a fiduciary seeking to enforce the terms of the plan at issue. The Fund's standing to bring this suit and jurisdiction to entertain it, therefore, clearly exist under this section.[5]

Plaintiff, in the alternative, contends that Rule 22(1), non-statutory interpleader, provides another basis for jurisdiction. The Fund has deposited the death benefit payable into the court's registry and has represented that it will promptly deposit any other monies, if required by the court. Because this suit requires an interpretation of federal law, diversity among the parties is not required. *See Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81–82 (9th Cir.1982). Jurisdiction, therefore, is properly invoked pursuant to non-statutory interpleader.

No party objects to plaintiff's jurisdictional grounds and applicable jurisprudence supports plaintiff's jurisdictional averments in its amended complaint. The court, therefore, finds federal law and the federal interpleader rule to vest it with jurisdiction.

## DISCUSSION

Plaintiff submits that the death benefits due must be paid in accordance with the Plan's terms. The Fund, therefore, argues that, if the court should determine Barbara Knight DeRocha ineligible to receive the QPSA, then the death benefit should be paid to Ronald DeRocha, Jr.'s designated beneficiary. The defendants obviously oppose the plaintiff's contentions that do not render a determination favorable to their respective positions.

The essential issue presented is whether Barbara Knight DeRocha should be disqualified from receiving any benefits because of her conviction in the death of her husband. Because no specific statutory provision addresses this question, the court must fashion an equitable answer. In this regard, one commentator has noted that "the courts have an obligation to create a body of federal common law concerning aspects of employee benefit plans, and the guideposts in fashioning this body of federal common include the policies underlying ERISA and, possibly, principles of state law that are compatible with national policy." R. Cooke, *ERISA Practice and Procedure* § 8.04 (1991). The court finds this statement especially applicable to the case at hand where no ERISA provision exists to guide this court.

The United States District Court for the Eastern District of New York, however, has found occasion to address the issue presented by this case. *See Mendez–Bellido v. Board of Trustees of Div. 1181, A.T.U. New York Employees Pension Fund & Plan*, 709 F.Supp. 329 (E.D.N.Y.1989). In *Mendez–Bellido*, the district judge held that a New York law was not pre-empted, which prevented a spouse who killed her husband from recovering death benefits due under an ERISA pension plan. This court's own research and the thorough analysis undertaken by the court in *Mendez–Bellido* convince the court that such should likewise be the result in this case.

The premise that a wrongdoer should not benefit from his or her misdeeds has long been part of Louisiana state law. *American Nat'l Life Ins. Co. v. Shaddinger*, 205 La. 11, 16 So.2d 889 (1944); *Smith v. Southern Nat'l Life Ins. Co.*, 134 So.2d 337 (La.Ct.App. 4th Cir.1961). *See gener-*

---

5. The court, in a minute entry dated October 9, 1991, initially found that it was without jurisdiction to entertain this action based on this statutory provision. Upon further consideration, the court, however, finds that the Fund has standing to bring this suit. In doing so, the court recognizes case law from another court questioning a fiduciary's standing to bring an action such as the one at hand. *See Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir.1987). None-

theless, this action presents distinguishable factual circumstances from that case. This court, therefore, has chosen to exercise its discretion in entertaining this declaratory judgment action, especially in consideration of plaintiff's amended complaint invoking jurisdiction under non-statutory interpleader and its efforts to comply with the procedural rules pursuant thereto.

*ally* Annotation, *Killing of Insured by Beneficiary as Affecting Life Insurance or Its Proceeds,* 27 A.L.R.3d 794 (1969 & Supp.) (noting general prohibition against person who intentionally or feloniously kills from receiving life insurance benefits). In 1979, the Louisiana legislature codified this principle. *See* La.Rev.Stat.Ann. 22:613 D (West Supp.1991). Section 613 D of the Louisiana Insurance Code states:

D. (1) No beneficiary, assignee, or other payee under any personal insurance contract shall receive from the insurer any benefits thereunder accruing upon the death, disablement, or injury of the individual insured when said beneficiary, assignee, or other payee is:

(a) Held by a final judgment of a court of competent jurisdiction to be criminally responsible for the death, disablement, or injury of the individual insured; or

(b) Judicially determined to have participated in the intentional, unjustified killing of the individual insured.

*Id.* § 613 D(1). This Louisiana statute, therefore, clearly prevents a person criminally responsible for the death of another person from benefitting financially from such act.[6]

The court, in considering this Louisiana act, notes that ERISA contains a broad pre-emption provision. 29 U.S.C. § 1144(a) (Supp. I 1989); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). ERISA, however, also contains an "insurance saving clause" (also known as the "deemer clause") that effectively exempts any law regulating insurance and not inconsistent with federal regulation in this

area. 29 U.S.C. § 1144(b)(2)(B) (Supp. I 1989); *Metropolitan Life Ins. Co.,* 471 U.S. at 732, 105 S.Ct. at 2385. Plaintiff argues that this statute is inapplicable because it relates to personal insurance contracts rather than an ERISA benefit plan or, even if not inapplicable, then ERISA pre-empts its application in this case. The court, however, finds plaintiff's arguments unpersuasive. At a minimum, this statute provides a "guidepost" to the court and, in the court's view, escapes pre-emption.

Federal common law provides an alternate basis to preclude Barbara Knight DeRocha from recovering the death benefits. In *Mendez–Bellido,* the district judge examined the federal jurisprudence in this area and held that federal common law clearly prevents "a beneficiary convicted of murdering the insured ... from receiving the insurance proceeds." 709 F.Supp. at 332 (citations omitted). As a consequence, the court in *Mendez–Bellido* refused to enforce section 205(a) of ERISA, which provides for the surviving spouse annuity.

This judge agrees and, as a matter of law, finds sufficient support in federal case law to bar Mrs. DeRocha from recovering the death benefits due.[7] Under both federal common law rules and Louisiana statutory principles, to say nothing of general public policy considerations, this court refuses to reward the second Mrs. DeRocha for an act of criminal homicide against her husband.

■ The prohibition against Mrs. DeRocha from recovering the decedent's death benefits leaves the court with two options.

---

6. Barbara Knight DeRocha pleaded guilty to manslaughter. Section 31 of the Louisiana Criminal Code to which Mrs. DeRocha apparently entered her plea is usually labeled as voluntary manslaughter. *See* La.Rev.Stat.Ann. 14:31 (West 1986) (reporter's comment). Her conviction certainly is a judicial recognition of her criminal responsibility for her husband's death. *In re Hamilton,* 446 So.2d 463 (La.Ct. App. 4th Cir.1984), *writ denied,* 448 So.2d 105 (La.1984). While the court recognizes that the Plan at issue differs from the personal insurance contracts regulated by the Louisiana Insurance Code, the policy considerations behind section 613 may be used in this case. Section 613, therefore, applies, if not by its own terms, then

through the use of this statute to provide guidance in an area not specifically addressed by ERISA regulation.

7. The court cannot believe that Congress, through enactment of the REA or any other legislation, sought to ensure spousal recovery under the extreme factual circumstances at hand. Such result would simply be morally repugnant as well as a clear violation of reasonable public policy principles—notwithstanding plaintiff's arguments in support of Barbara Knight DeRocha's unqualified right to these benefits.

First, the court may look to the designated beneficiary and find that Mr. DeRocha named his former wife, Anna Kuhn DeRocha Barnett, as the recipient of his benefits. The alternative would be to award the benefit to the estate, a result which would effectively inure to the benefit of the five heirs named as defendants in this suit. Under the clear provisions of the Plan at issue and Louisiana state law, the court finds the proper choice to be Mrs. Barnett.

The stipulated facts and law provide that, in the event the decedent's spouse waives her right to the QPSA or is otherwise ineligible, then section 5.4 of the Plan requires payment to the designated beneficiary. In this case, the parties do not contest that Mr. DeRocha had named his former wife, Anna Kuhn DeRocha Barnett, as the designated beneficiary and never changed it upon his divorce and re-marriage. Moreover, the parties do not present as a contested issue whether Mr. DeRocha even considered changing his beneficiary. The court, therefore, must conclude that, as a matter of law, Mrs. Barnett is entitled to the death benefit as the beneficiary named in the Plan.

Louisiana law also would reach such a result. Section 613 of the Louisiana Insurance Code provides that, when a primary beneficiary becomes disqualified because of criminal responsibility for the death of the insured, then the secondary or contingent beneficiary receives the policy proceeds. La.Rev.Stat.Ann. 22:613 D(2).[8] Such provision regulating insurance conflicts with no federal law or regulation in this area and, consequently, escapes pre-emption. The court, therefore, would arrive at the same result reached under an interpretation of the Plan itself and the federal law regulating it.

## CONCLUSION

The controversy presented by this case is of tragic proportions and, thankfully, not one commonly found in ERISA jurisprudence. The facts and the law most applicable to this case mandate the result reached by the court. Barbara Knight DeRocha must not benefit from her misdeed—notwithstanding the court's understanding of the tragic circumstances resulting in her act. Moreover, federal and state law do not provide for Mr. DeRocha's estate and, more particularly, his remaining family members to recover where a designated beneficiary has been named. The court, therefore, finds in favor of Anna Kuhn DeRocha Barnett and judgment shall be entered accordingly.

IT IS SO ORDERED.

## APPENDIX A

The checklist attached to the minutes states, in part:

3. Surviving Spouse Benefits—
a. *Mandatory Survivor Coverage.* Under the Retirement Equity Act, the Plan must pay retirement benefits in a form that guarantees a survivor benefit to the participant's spouse unless another benefit form is chosen in accordance with specified procedures. The Plan *must* also provide some form of pre-retirement death benefit to the surviving spouse of an employee with a vested right to a benefit under the Plan unless some other benefit is chosen.

This expanded pre-retirement surviving spouse coverage automatically applies to all vested employees with at least one hour of service after August 22, 1984, and to those whose service terminated after December 31, 1975 but before August 23, 1984, if they had 10 years of service, are not yet receiving benefits and request spouse coverage from the Plan. Revisions in the requirements for retiring participants including a requirement that qualified joint and survivor benefits be offered

---

8. Plaintiff devotes considerable attention to the judgment rendered pursuant to article 966 of the Louisiana Civil Code, which rendered Barbara Knight DeRocha an unworthy heir. This decree, however, did not specifically address the pension benefits at issue. Furthermore, even if it had, Louisiana state law would have provided that the death benefit be payable to the named beneficiary rather than the estate. *See* La.Rev. Stat.Ann. 22:613 D (West Supp.1991). The court, therefore, finds this judgment and arguments supporting enforcement of it to be of no consequence.

to disability pensioners younger than 55 are effective beginning *January 1, 1987.*

b. *Spousal Consent to Waive Surviving Spouse Coverage.* An employee's choice of an option other than surviving spouse coverage will not be valid unless the spouse consents to it in writing before a notary or a plan representative or unless the employee can demonstrate that there is no spouse or that the spouse cannot be found. This requirement of the Retirement Equity Act applies to all benefit elections made after December 31, 1984. It will be necessary to develop appropriate forms and procedures for notifying employees and their spouses of their options and to explain the ramifications of registering, validating and keeping track of the spousal consents and the statements of spousal availability. If the Trustees decide to charge for pre-retirement coverage, special notice and consent procedures will be needed. They must be triggered whenever an active or terminated vested employee separates from service, reaches age 35 or changes marital status. The required consent will also need to be reflected in plan language.