### NEW ORLEANS ELECTRICAL PENSION FUND

v.

### Barbara Roberts NEWMAN, et al.

### Civ. A. No. 90–1935.

United States District Court,
E.D. Louisiana.

Jan. 31, 1992.

Marie Healey, Jeanne Theresa Cresson, Sarah Hall Voigt, Sean Renee Dawson, Maria C. Cangemi, Marie Healey & Associates, APLC, New Orleans, La., for plaintiff.

Leonce J. Malus, III, Andry & Andry, Thomas J. Toranto, Jr., New Orleans, La., for defendant.

WICKER, District Judge.

This is an action for declaratory judgment to determine rights to benefits under the New Orleans Electrical Pension Plan ["the Plan"] as between the Estate of the deceased participant, Frank Francis Newman, Sr., and the spouse, Barbara Roberts Newman. The matter was submitted to the Court on an earlier date.

After considering the stipulation of facts, the briefs of counsel and the applicable law and for the reasons which follow, the Court finds in favor of the Estate of Frank Newman and against the spouse, Barbara Roberts Newman, and the plaintiff, New Orleans Electrical Pension Fund.

The parties stipulated to the following facts:

Plaintiff, New Orleans Electrical Pension Fund ["the Fund"], is a jointly administered multi-employer employee benefit plan and trust established and administered pursuant to the Retirement Equity Act of 1984 ["REA"], 26 U.S.C. § 401 *et seq.*, with its place of business in Metairie, Louisiana.

Frank Francis Newman, Sr., born July 12, 1930, was employed from January 20, 1954 to March 9, 1982, by electrical employers working in the New Orleans area who are signatory to collective bargaining agreements with the Fund's sponsoring Union, Local 130, International Brotherhood of Electrical Workers. Mr. Newman died on February 1, 1987, as a result of a gunshot wound to the chest.

Defendant Barbara Roberts Newman, the surviving wife of Frank Newman, Sr., a Louisiana domiciliary, is presently in the custody of the Mississippi Department of Corrections serving a fifteen (15) year sentence, following her September 2, 1987, guilty plea to the crime of manslaughter in the death of her husband, Frank Newman. Defendants Denise A. Newman, Frank F. Newman, Jr., Patrice A. Newman, and Richard F. Newman, the surviving children of Frank Newman, Sr., are citizens and residents of the State of Louisiana and are domiciled within the jurisdiction of this Court.

On March 27, 1989, Frank F. Newman, Jr. and Richard E. Newman (as Co-administrators of the Succession of Frank Francis Newman, Sr.), and Barbara Newman, appearing through her attorney, Malcolm

Roberts, Sr., brought a "Joint Motion and Order Declaring Spouse Unworthy Heir and Designating Decedent's Estate as Beneficiary" as part of the probate proceeding in the Civil District Court for the Parish of Orleans, No. 88–1630, Division "G", wherein an Order was entered declaring, in part:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the said Barbara Roberts Newman is hereby decreed to be an unworthy heir in the succession of Frank Francis Newman, Sr. and as such, is not entitled to the usufruct granted to her by law over the property of the decedent's estate and that the decedent's heirs, more particularly, Frank F. Newman, Jr., Richard E. Newman, Patrice Ann Newman, wife of John Ivey, and Denise Ann Newman are entitled to the decedent's estate free from any usufruct granted to her by law.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that any and all proceeds payable under any and all life insurance policies issued in the name of the decedent and payable to Barbara Roberts Newman, decedent's widow, as beneficiary, be and are hereby ordered to pay said proceeds to the Succession of Frank Francis Newman, Sr., which said proceeds shall be designated as the property of the decedent's separate estate, more particularly, but not limited to the following policies of insurance known to be and are believed to be in effect at the time of the decedent's death:

Durham Life Insurance Company Policy No. 3095–10355–436361062
Metropolitan Life Insurance Company Policy No. 680 299 847 A
Metropolitan Life Insurance Company Policy No. 681 200 847 A
Death Benefits due Barbara Newman as beneficiary under Electrical Worker's Benefit Association.

At the time of his death, Mr. Newman had participated in the Plan from June 1, 1961, to May 1982 and had accumulated seven (7) years of Past Service Credit, 25.646 years of Future Service Credit and 36.405 years of Vesting Service; he had earned a vested pension pursuant to § 3.06 of the Plan and had filed a "Beneficiary Card" wherein he designated his wife, Barbara Newman, as beneficiary. Mr. Newman had not retired and had not filed an application for retirement benefits.

The Qualified Pre-retirement Survivor Annuity ["QPSA"] provisions as imposed by § 203(b) of the Retirement Equity Act of 1984 ["REA"] are applicable to any participant who performed at least one hour of service under the plan on or after August 23, 1984. Section 303(e)(2) of REA provides a transitional rule for participants who separated under a plan before the date of enactment (August 22, 1984) but after December 31, 1975, and whose benefits were not in pay status as of the date of enactment. Under Section 303(e)(3), the participant had a right to elect a qualified pre-retirement survivor annuity during a period beginning on the date of enactment and ending on the earlier of the participant's annuity starting date or the date of the participant's death, if the participant (1) had completed at least one (1) hour of service in the first plan year beginning after December 31, 1975, and no hour of service after the date of enactment, (2) had completed at least ten (10) years of service under the plan, (3) had a nonforfeitable right to all or any portion of his or her accrued benefit under the plan derived from employer contributions, and (4) as of the date of enactment, had not reached his or her annuity starting date and was still alive.

REA amended the Plan and required that the Plan distribute benefits to the surviving spouse in the form of a QPSA upon the death of a participant who had not on his date of death qualified for retirement benefits under the terms of the plan. [Plaintiff's Exhibit A, Affidavit of Doris A. Costa.]

Mr. Newman was last employed by an electrical employer in the New Orleans area on March 9, 1982, and had not completed at least one hour of service under § 1.15 of the Plan on or after August 23, 1984. At the time of his death, Mr. Newman had not elected coverage for a pre-

retirement surviving spouse pension pursuant to Plan § 5.04(b) and REA § 303(e)(2).

Mrs. Newman qualifies as the surviving "Qualified Spouse" of Frank F. Newman, Sr. as that term is defined under § 5.03(b) of the Plan. Under ordinary circumstances, as a surviving "Qualified Spouse" and as beneficiary of Frank F. Newman, Sr., Mrs. Newman would be entitled to a Death Benefit under Plan § 3.12 equal to $3,000 in cash plus $200 per month for a sixty (60)–month period.

Barbara Newman was declared an unworthy heir by the Civil District Court for the Parish of Orleans, State of Louisiana. She was found to be ineligible for usufruct under La.C.C. art. 966, and ineligible to collect on her husband's insurance policies under La.R.S. 22:613. Even though death benefits are neither an inheritance or life insurance proceeds, La.C.C. art. 966 and La.R.S. 22:613 clearly evidence an intent on the part of the Louisiana legislature that one who kills a spouse should not benefit financially from the murder.

■ Notwithstanding her ineligibility under Louisiana state law, both Mrs. Newman and the New Orleans Electrical Pension Fund contend that Mrs. Newman is entitled to recover benefits from the Fund because Mrs. Newman is a surviving qualified spouse under the Plan who can recover under ERISA and ERISA preempts the Louisiana killer statutes.[1] Whether a certain state action is preempted by federal law is one of congressional intent [*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)] and this Court finds that Congress did not intend ERISA to preempt state laws which prohibit murderers from reaping financial benefits as a result of their crimes. *See New Orleans Electrical Pension Fund v. DeRocha*, 779 F.Supp. 845 (E.D.La.1991). *Accord, Mendez–Bellido v. Board of Trustees, A.T.C.*, 709 F.Supp. 329 (E.D.N.Y.1989) which held that state killer statutes prohibiting a killer from inheriting from the decedent do not "relate" to employee benefit plans and thus are *not* subject to the ERISA preemption. Furthermore, this Court finds that the application of the state killer statutes does not conflict with federal law.[2] Therefore the Court finds that ERISA does not preempt the Louisiana killer statutes and Barbara Newman may not collect her late husband's pension benefits.

However, even assuming arguendo that ERISA does preempt the state killer statutes, the Court still finds that Mrs. Newman may not collect benefits from the Fund despite several arguments to the contrary.

■ The first argument presented is that Mrs. Newman is prevented from relinquishing her rights to the pension death benefits by the ERISA anti-alienation provisions. 29 U.S.C. § 1056(d)(1). On the contrary, the Court finds that Barbara Newman did in fact waive her right to death benefits under the Plan by joining and admitting in the state court Motion and Order that she was an unworthy heir. The Court further finds that such waiver does not contravene the anti-alienation provisions of ERISA.

The anti-alienation provisions of Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1),

---

1. Section 514(a) of ERISA, 29 U.S.C. § 1144(a); *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981); *Iron Workers Pension Fund v. Terotechnology*, 891 F.2d 548 (5th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990): *Cefalu v. B.F. Goodrich Company*, 871 F.2d 1290 (5th Cir.1989).

2. *See generally, Ridgeway v. Ridgeway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981) [Although Servicemen's Group Life Insurance Act ["SGLIA"] and the designated beneficiary prevail over state law, there may be "extreme fact situations or instances where the beneficiary has obtained the proceeds through fraudulent or illegal means as, for example, where the named beneficiary murders the insured service member." *Id.* at 60, 102 S.Ct. at 57, n. 9]; *Prudential Insurance Co. v. Tull*, 690 F.2d 848, 849 (4th Cir.1982) ["In a case brought under SGLIA, federal law recognizes that the beneficiary's claim is barred by the equitable defense: No person should be permitted to profit from his own wrong." *Id.*]; *Shoemaker v. Shoemaker, et al,* 263 F.2d 931 (6th Cir.1959).

are directed to plan participants.[3] In this case, the congressional policy choice articulated in *Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990) of safeguarding the stream of income for pensioners and their blameless dependents (see note 2, *supra*) is not offended by this Court's decision that the policy considerations that underlie the "killer statutes" provide an implied exception to the anti-alienation rule. *Accord, Stobnicki v. Textron, Inc.* 868 F.2d 1460 (5th Cir.1989);[4] *Fox Valley and Vicinity Construction Workers Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).[5]

■ The Plan makes the final argument that even if Mrs. Newman is not entitled to death benefits, she has not waived her right to receive a QPSA under the Plan and is entitled to those benefits. The Court disagrees. Mrs. Newman's admission in the state court Order that she is an unworthy heir also constitutes a sufficient waiver of her interest in the QPSA.[6]

§ 503(e)(ii) of the Plan requires both the consent of the participant and the spouse to waive the QPSA.[7] The Plan is silent as to what constitutes waiver when the participant is dead. Also § 503(e)(ii) of the Plan clearly is meant to protect innocent spouses. As discussed earlier, it is significant in this case that Mrs. Newman is not an innocent spouse. *See generally New Orleans Electrical Pension Fund v. DeRocha, supra; Guidry, supra; Mendez–Bellido, supra.* Therefore this Court's finding that Mrs. Newman waived her right to the QPSA by participating in the joint motion in state court does not violate § 503(e)(ii) of the Plan.

The Court's finding that Mrs. Newman waived her right to the QPSA also does not violate ERISA. The ERISA provisions on waiver all concern the plan participant's decision to waive election of a QPSA. Section 205(c)(2) of ERISA, 29 U.S.C. § 1055(c)(2) provides:

(2) Each plan shall provide that an election under paragraph (1)(a)(i) [to waive the QPSA] shall not take effect unless—

3. *Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). After Guidry pleaded guilty to embezzling funds from his union, the union obtained a judgment against him and the court imposed a constructive trust on his pension benefits. In reversing, the U.S. Supreme Court declined to approve "any generalized exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment of alienation of prison benefits," based on its perception of "a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents who may be, and perhaps usually are, blameless) even if that decision prevents others from securing relief for the wrongs done them." *Id.* 110 S.Ct. at 687.

4. The anti-alienation provisions of ERISA and the Internal Revenue Code did not preclude a pension plan beneficiary from assigning her benefits as part of a final legal settlement of a dispute.

5. Where a non-plan participant waives an interest in pension benefits, a specific waiver of rights to pension benefits in a divorce settlement was not preempted by ERISA's anti-alienation provisions.

6. REA § 303(e)(4) requires that the Plan give notice to participants of the QPSA provisions and allow plan participants the opportunity to elect to be subject to the REA QPSA provisions. However, the Court finds that the fact that Mr. Newman was apparently not notified of the opportunity to elect to have the QPSA provisions apply to his benefits does mean that Mrs. Newman is entitled to a QPSA. *Kaszuk v. Bakery and Confectionery Union and Industry International Pension Fund,* 791 F.2d 548 (7th Cir.1986) is clearly distinguishable. In *Kaszuk* the evidence was two-fold: the fund did not adequately notify the participants *and* the participant would have elected QPSA had he been so notified. 791 F.2d at 588. In this case, while there is no evidence that Newman was notified of his option to elect coverage for Mrs. Newman, there is likewise no evidence that had he been so notified that he would have elected coverage.

7. § 503(e)(ii) of the N.O. Electrical Pension Plan provides that the QPSA may be waived in favor of a beneficiary other than the surviving spouse only as follows:
the Participant's Spouse (i) acknowledges the effect of the waiver and consents to it in writing, witnessed by a Notary Public and (ii) if an alternate Beneficiary is designated, acknowledges that said designation may not be revoked without spousal consent.

(A)(i) the spouse of the participant consent in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public, *or*

(B) it is established to the satisfaction of a plan representative that the consent required under subparagraph (A) may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe.

While the first part of the statute requires a consent similar to that required by § 503(e) of the Plan, the statute is written in the disjunctive and the second alternative clearly provides for waiver where consent of both spouses is not feasible.[8] By analogy, the ERISA provisions which allow waiver by the plan participant alone in cases of abandonment[9] or divorce are consistent with this Court's finding that, under the extreme and unfortunate facts of this case, Mrs. Newman's voluntary participation in a state court order declaring her unworthy for having killed the plan participant fulfills the legal requirement of a written waiver of the QPSA.

Let judgment be entered in favor of the Estate of Frank Newman, Sr. and against Barbara Roberts Newman and the New Orleans Electrical Pension Fund.

New Orleans, Louisiana, this 30 day of January, 1992.

## JUDGMENT

Pursuant to the Court's opinion entered February 3, 1992, as amended;

IT IS ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered in favor of the Succession of Frank Francis Newman whose heirs are identified therein as Frank Francis Newman, Jr., Denise A. Newman, Patrice A. Newman, and Richard E. Newman, and against Barbara Roberts Newman.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that New Orleans Electrical Pension Fund pay to the Succession of Frank Francis Newman whose heirs are identified therein as Frank Francis Newman, Jr., Denise A. Newman, Patrice A. Newman, and Richard E. Newman, the sum of $20,998.21, representing a $3,000 lump sum death benefit payable on March 1, 1987, together with a $200 monthly annuity payable of the first day of each calendar month for sixty (60) months thereafter, plus interest on each such payment at the legal rate, compounded monthly, from the due date until entry of this Judgment.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this action is hereby dismissed, each party to bear its own costs.

---

**8.** Treasury Regs., 1.401(a)–20, appearing at 26 CFR 1.401(a)–20 explains further:

> Q–27  Are there circumstances when spousal consent to a participant's election to waive the QPSA is not required?
> A–27:  ... [I]f the participant is legally separated or the participant has been abandoned (within the meaning of local law) and the participant has a court order to such effect, spousal consent is not required unless a Qualified Domestic Relations Order provides otherwise. Similar rules apply to a plan subject to the requirements of section 401(a)(11)(B)(iii)(I).

**9.** Although of no value as precedence, an IRS Private letter interpreted the word "abandon" to waive the necessity for spousal consent in cases of murder as well as in cases of abandonment and divorce, the argument being that murder should not be favored over the other less drastic means of ending a marriage.