AHMED, Appellant,

v.

AHMED et al., Appellees.

[Cite as *Ahmed v. Ahmed*, 158 Ohio App.3d 527, 2004-Ohio-5120.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 03 BE 65.

Decided Sept. 24, 2004.

528

Hanlon, Duff, Estadt & McCormick, Co., LPA, and John R. Estadt, for appellant.

Harper & Hazlett and Marlin J. Harper, for appellee Ibtisam Tariq Ahmed.

Thomas A. Hampton, for appellee estate of Lubaina Bhatti Ahmed.

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiff-appellant, Ahsan Ahmed, appeals the decision of the Belmont County Common Pleas Court, Probate Division, that granted summary judgment to defendant-appellee, Ibtisam Tariq Ahmed. This was a declaratory judgment action regarding who was entitled to the life

insurance proceeds of Ahsan and Ibtisam's mother, Lubaina Bhatti Ahmed. Ahsan argues that the life insurance proceeds must be placed in a constructive trust for the benefit of both children. Ibtisam argues that he is entitled to all the proceeds, since he is the sole contingent beneficiary listed under the policy. Neither party is correct.

{¶ 2} Although Ibtisam would receive all the proceeds from the life insurance contract under Ohio law, federal law preempts Ohio law in this case, since the life insurance policy in question is an ERISA-related plan. The Employee Retirement Income Security Act ("ERISA") preempts all state law "related to" ERISA plans. Under the United States Supreme Court's most recent decision, ERISA preempts R.C. 2105.19, since plan administrators would otherwise be obliged to master the relevant laws of the 50 states and contend with litigation, thus undermining the goals of ERISA.

{¶ 3} Since ERISA preempts R.C. 2105.19, we must apply federal common law to determine who receives the proceeds. Federal common law states that Nawaz Ahmed, Lubaina's husband, cannot receive the proceeds, because he murdered Lubaina. The plain language of the contract does not allow the insurance company to give the insurance proceeds to the contingent beneficiary because the contingency, that the primary beneficiary predecease the insured, has not occurred. Accordingly, the proceeds at issue must go to Lubaina's estate.

{¶ 4} At this point in the proceedings, it is unclear how Lubaina's estate would distribute the proceeds. Accordingly, we must reverse the trial court's decision and remand the matter for further proceedings.

## Facts

{¶ 5} Lubaina and Nawaz are the natural parents of Ibtisam and Ahsan. Lubaina was employed as a physician at the Ohio Valley Health Services and Education Corporation. As a benefit of that employment, Ohio Valley enrolled Lubaina in a life insurance policy. Before Ahsan was born, Lubaina designated Nawaz as her primary and secondary beneficiary and Ibtisam as the contingent beneficiary. After Ahsan's birth, Lubaina never designated Ahsan as a second contingent beneficiary to her life insurance policy.

{¶ 6} Under the policy, the contingent beneficiary would receive the proceeds from the contract if the primary beneficiary predeceased the insured. The policy also contained a general provision for distribution of the proceeds if there were no surviving beneficiaries at the time of Lubaina's death. The policy had no provision describing how the proceeds should be distributed if the primary beneficiary was alive at the time of Lubaina's death, but was not legally entitled to receive the proceeds.

{¶ 7} Tragically, Nawaz murdered Lubaina. He has since been sentenced to death for his crimes. The Belmont County Probate Court found that Nawaz was convicted of murdering Lubaina and, pursuant to R.C. 2105.19(A), declared that all property and insurance proceeds should be paid as if Nawaz predeceased Lubaina.

{¶ 8} After her death, the company insuring Lubaina's life paid half of the benefits due under the policy to Ibtisam as the contingent beneficiary. It did not distribute the other half of the proceeds because of a dispute regarding whether Ahsan or Ibtisam was entitled to those benefits. Ahsan filed a complaint against Ibtisam, Lubaina's estate, and the insurance company, seeking a declaration that he was entitled to the remaining life insurance benefits.

{¶ 9} Subsequently, Ahsan moved for summary judgment, arguing that neither ERISA nor Ohio contract law governed the outcome of this case. According to Ahsan, R.C. 2105.19(B) required that the insurance proceeds be placed in a constructive trust for the benefit of both Ahsan and Ibtisam. Ibtisam filed his own motion for summary judgment, arguing that Nawaz never received the insurance proceeds, so R.C. 2105.19(A) rather than R.C. 2105.19(B) applied in this case. The trial court granted summary judgment to Ibtisam.

## Standard of Review

{¶ 10} In his sole assignment of error, Ahsan argues:

{¶ 11} "The probate court erred in awarding Ibtisam Tariq Ahmed the entire proceeds of the insurance policy at issue and thereby committed reversible error in refusing to order that a constructive trust be established for the benefit of both the decedent's children."

{¶ 12} When reviewing a trial court's decision to grant summary judgment, this court applies the same standard as the trial court and, therefore, engages in a de novo review. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is proper only when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude that no genuine issue as to any material fact remains to be litigated and that the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

{¶ 13} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving

party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264.

### Slayer Statute

{¶ 14} In each of the arguments he makes in support of his assignment of error, Ahsan contends that Nawaz should receive the life insurance proceeds and that the proceeds should benefit both of the children in a constructive trust. He first argues that ERISA mandates that Nawaz receive the proceeds of the life insurance policy and that those proceeds should be placed in a constructive trust pursuant to R.C. 2105.19(B) for the benefit of both the children. Ahsan then argues that the Ohio Supreme Court does not allow a person to be treated as dead for the purposes of determining who benefits from a life insurance policy if that person is actually alive. So he again claims that Nawaz should receive the proceeds but that those proceeds should be placed in a constructive trust for the benefit of both the children.

{¶ 15} Under Ohio's common law, the beneficiary of a life insurance policy cannot be treated as legally dead as long as he is actually alive. *Neff v. Massachusetts Mut. Life Ins. Co.* (1952), 158 Ohio St. 45, 48 O.O. 24, 107 N.E.2d 100, paragraph two of the syllabus. "The so-called doctrine of 'civil death' in this country is generally based upon statute and does not prevail in Ohio." Id. at 48–49, 48 O.O. 24, 107 N.E.2d 100. Accordingly, if the primary beneficiary of such a contract murders the insured, "[t]he disposition of the proceeds of [the] life insurance policy is controlled by the terms of the policy relating to such matter." Id. at paragraph three of the syllabus.

{¶ 16} The legislature subsequently modified that common-law rule by enacting R.C. 2105.19, Ohio's "slayer statute." That kind of statute prevents a murdering heir from receiving property because of the killing. See *Egelhoff v. Egelhoff* (2001), 532 U.S. 141, 152, 121 S.Ct. 1322, 149 L.Ed.2d 264. Under that statute, no one who is convicted of murder, aggravated murder, or voluntary manslaughter "shall in any way benefit by the death." It continues, "All property of the decedent, and all money, insurance proceeds, or other property or benefits payable or distributable in respect of the decedent's death, shall pass or be paid or distributed as if the person who caused the death of the decedent had predeceased the decedent." R.C. 2105.19(A). If the murderer has benefited from the death, then he or she "is a constructive trustee for the benefit of those entitled to any property or benefit that the person has obtained, or over which he has exerted control, because of the decedent's death." R.C. 2105.19(B).

{¶ 17} Thus, under current Ohio law, we must treat Nawaz as if he predeceased Lubaina. If we were applying Ohio law, the proceeds would go to the only

beneficiary of the policy, Ibtisam. But we cannot apply Ohio law, since ERISA preempts the application of R.C. 2105.19 in this case.

## ERISA

{¶ 18} The life insurance policy in this case is subject to ERISA, Section 1001 et seq., Title 29, U.S.Code. That act applies to "any employee benefit plan if it is established or maintained" by, among other things, "any employer engaged in commerce," with certain exceptions that do not apply in this case. Section 1003(a)(1) and (b), Title 29, U.S.Code. Any plan, fund, or program that is established or maintained to provide death benefits to its participants or their beneficiaries "through the purchase of insurance or otherwise" is an employee-benefit plan. Section 1002(1) and (3). Since Lubaina's employer bought the life insurance policy for Lubaina as a benefit of her employment, it is an employee-benefit plan governed by ERISA.

{¶ 19} ERISA allows a beneficiary to a plan, such as Ahsan, to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(a)(1)(B). ERISA provides an exclusive federal cause of action for resolution of disputes filed under Section 1132(a)(1)(B). *Metro. Life Ins. Co. v. Taylor* (1987), 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55. Nevertheless, state and federal courts have concurrent jurisdiction over actions filed pursuant to Section 1132(a)(1)(B). Section 1132(e)(1).

{¶ 20} Congress intended for ERISA to "establish pension plan regulation as exclusively a federal concern." *FMC Corp. v. Holliday* (1990), 498 U.S. 52, 64, 111 S.Ct. 403, 112 L.Ed.2d 356. With certain exceptions that do not apply in this case, ERISA's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title and not exempt under Section 1003(b) of this title." Section 1144(a). The phrase "relate to" is "broadly worded," and a law relates to an employee-benefit plan "if it has a connection with or reference to such a plan." *Egelhoff*, 532 U.S. at 146–147, 121 S.Ct. 1322, 149 L.Ed.2d 264; *Shaw v. Delta Air Lines* (1983), 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490.

{¶ 21} Few cases address whether slayer statutes such as R.C. 2105.19 are preempted by ERISA. This is fortunate "for the state of marital relations in America," since each case involving this discussion is a case "of tragic proportions." *Admin. Comm. for H.E.B. Invest. & Retirement Plan v. Harris* (E.D.Tex.2002), 217 F.Supp.2d 759, 761; *Addison v. Metro. Life Ins. Co.* (W.D.Va. 1998), 5 F.Supp.2d 392. But the United States Supreme Court's recent decision in *Egelhoff* leads us to conclude that ERISA preempts state slayer statutes.

{¶ 22} In *Egelhoff*, the United States Supreme Court held that ERISA preempts a statute that automatically revoked any designation of a spouse as a beneficiary of a nonprobate asset upon divorce to the extent that the statute applies to ERISA plans. Id., 532 U.S. at 143, 121 S.Ct. 1322, 149 L.Ed.2d 264. It recognized that its decision might affect whether slayer statutes are preempted by ERISA, but it refused to answer that question at that time. Id. at 152, 121 S.Ct. 1322, 149 L.Ed.2d 264. But given the court's rationale, we cannot distinguish slayer statutes from the statute at issue in *Egelhoff*.

{¶ 23} In *Egelhoff*, the parties were married, the husband's employer provided him with a life insurance policy, and he designated his wife as the beneficiary under the policy. The two then divorced, but the wife remained the listed beneficiary on the policy. Two months after the divorce, the husband died. Washington law provided that if a marriage was dissolved, then any designation prior to the divorce of the former spouse as a beneficiary of a life insurance policy was automatically revoked unless the parties specifically stated otherwise. The husband's statutory heirs argued that they were entitled to the proceeds from the life insurance policy. His former wife argued that this statute was preempted by ERISA.

{¶ 24} The court began its analysis by noting that courts must " 'look both to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," as well as to the nature of the effect of the state law on ERISA plans' " when determining whether a statute "relates to" an ERISA plan. Id., 532 U.S. at 147, 121 S.Ct. 1322, 149 L.Ed.2d 264, quoting *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.* (1997), 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791. (Citation omitted.)

{¶ 25} "The statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than those identified in the plan documents. The statute thus implicates an area of core ERISA concern. In particular, it runs counter to ERISA's commands that a plan shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.' § 1002(8)." *Egelhoff*, 532 U.S. at 147, 121 S.Ct. 1322, 149 L.Ed.2d 264.

{¶ 26} The statute also interfered "with nationally uniform plan administration," one of ERISA's goals. Id. at 148, 121 S.Ct. 1322, 149 L.Ed.2d 264. "Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators—burdens

ultimately borne by the beneficiaries." Id. at 149–150, 121 S.Ct. 1322, 149 L.Ed.2d 264, quoting *Ingersoll–Rand Co. v. McClendon* (1990), 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474.

{¶ 27} As the court recognized, applying slayer statutes to ERISA-related plans implicates those same goals and concerns. *Egelhoff*, 532 U.S. at 152, 121 S.Ct. 1322, 149 L.Ed.2d 264. "In the ERISA context, these 'slayer' statutes could revoke the beneficiary status of someone who murdered a plan participant." Id. However, since *Egelhoff* did not involve a slayer statute, the court refused to decide the issue.

{¶ 28} The cases that have addressed the issue after *Egelhoff* have carefully sidestepped the question the court avoided answering in *Egelhoff*. For instance, in *H.E.B. Invest.*, the court concluded that the murderer would not be entitled to the insurance proceeds regardless of whether ERISA preempted a state slayer statute. 217 F.Supp.2d at 761–762. Thus, it did not determine whether ERISA actually preempted the state slayer statute.

{¶ 29} We cannot sidestep the question in the same manner. We must determine whether to award the proceeds to Ibtisam, to Ibtisam and Ahsan, or to some third party. Accordingly, we must determine whether ERISA preempts R.C. 2105.19(A).

### Preemption

{¶ 30} For all intents and purposes, slayer statutes affect the administration of ERISA plans in the same manner as the statute discussed in *Egelhoff*.

{¶ 31} As of 1993, 44 states and the District of Columbia had enacted slayer statutes, four states had a general common-law rule prohibiting a killer from benefiting from his crimes, one had a common-law rule barring a beneficiary who kills an insured from recovering from a life insurance policy, and the law in the one remaining state is unclear. Sherman, Mercy Killing and the Right to Inherit (1993), 61 U.Cin.L.Rev. 803, 805, 876, fn.12. These laws differ in many respects.

{¶ 32} First, the states differ over the nature of the killing that disqualifies the beneficiary. Id. at 848–849; Schuman, Life Insurance and the Homicidal Beneficiary: The Insurer's Responsibilities Under State Slayer Laws and Statutes (2001), 51 Fedn. Ins. & Corp. Counsel. Q. 197, 202–205. Every statute disqualifies beneficiaries who have committed the equivalent of either murder or aggravated murder, but some include offenses like voluntary manslaughter or causing suicide, while others do not. Compare R.C. 2105.19 (disqualifying a beneficiary for committing either aggravated murder, murder, or voluntary manslaughter); Ind.Code Ann. 29–1–2–12.1 (disqualifying a beneficiary for committing either aggravated murder, murder, voluntary manslaughter, or causing suicide); Ark. Code Ann. 28–11–204 (disqualifying a beneficiary for committing either first- or

second-degree murder). And many states disqualify a beneficiary who has "feloniously and intentionally" killed the insured without defining what they mean by felonious and intentional killings. See Ariz.Rev.State.Ann. 14–2803; Haw.Rev. Stat. 560:2–803.

{¶ 33} Second, states require varying burdens of proof upon the person seeking to disqualify the killer as a beneficiary. For instance, in the absence of a conviction some states will disqualify a beneficiary if the trial court determines by a preponderance of the evidence that "the person would be found criminally accountable for the felonious and intentional killing of the decedent." Ariz.Rev. State.Ann. 14–2803(F); Haw.Rev.Stat. 560:2–803(g). In contrast, other states require that the killing be proven by clear and convincing evidence. Ga.Code Ann. 53–1–5(d). Ohio disqualifies the beneficiary only after he is convicted of or pleads guilty to one of the stated violations. R.C. 2105.19(A). Still other states disqualify a beneficiary who has been convicted only after all the beneficiary's appellate rights "have been exhausted." Haw.Rev.Stat. 560:2–803(g).

{¶ 34} Further complicating the matter is that some states, like Ohio, declare that a slayer statute only supplements, rather than supersedes, common law, while others come to the contrary conclusion. Contrast *Shrader v. Equitable Life Assur. Soc. of United States* (1985), 20 Ohio St.3d 41, 44, 20 OBR 343, 485 N.E.2d 1031; *Holliday v. McMullen* (1988), 104 Nev. 294, 756 P.2d 1179, 1180. According to others, a criminal conviction does not conclusively prove that a beneficiary is prohibited from recovering life insurance proceeds, some going so far as to bar evidence of a conviction. See *Johnson v. Hebb* (D.Md.1990), 729 F.Supp. 1524; *Smith v. Dean* (1956), 226 Ark. 438, 290 S.W.2d 439; *Lillie v. Modern Woodmen of Am.* (1911), 89 Neb. 1, 130 N.W. 1004. In contrast, Ohio bars a beneficiary from recovering only *after* a criminal conviction. R.C. 2105.19(A).

{¶ 35} Given the variety of ways in which the different states enforce the general principle behind slayer statutes, the court's description of the statute in *Egelhoff* perfectly describes R.C. 2105.19(A)'s effect on ERISA plans and plan administrators. It "implicates an area of core ERISA concern" by obliging ERISA plan administrators to "pay benefits to the beneficiaries chosen by state law, rather than those identified in the plan documents." 532 U.S. at 147, 121 S.Ct. 1322, 149 L.Ed.2d 264. Thus, slayer statutes interfere "with nationally uniform plan administration," one of ERISA's goals. Id. at 148, 121 S.Ct. 1322, 149 L.Ed.2d 264. Forcing plan administrators "to master the relevant laws of 50 States and to contend with litigation" does not foster "the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' " on those administrators. Id. at 149–150, 121 S.Ct. 1322, 149 L.Ed.2d 264. Accordingly, we must conclude that ERISA preempts Ohio's slayer statute in this case.

Distribution of the Proceeds Under Federal Common Law

{¶ 36} Since ERISA preempts R.C. 2105.19, the determination of who is a beneficiary of the life insurance policy is a question of federal law that must be determined using federal common law. *Tinsley v. Gen. Motors Corp.* (C.A.6, 2000), 227 F.3d 700, 704; *Metro. Life Ins. Co. v. Pressley* (C.A.6, 1996), 82 F.3d 126, 129. After federal law determines who the beneficiary under an insurance policy is, state law may govern whether that beneficiary can recover the proceeds. *Cent. States, Southeast & Southwest Areas Pension Fund v. Howell* (C.A.6, 2000), 227 F.3d 672.

{¶ 37} Under federal common law, Nawaz cannot recover the insurance proceeds. "It would be a reproach to the jurisprudence of the country, if [a beneficiary] could recover insurance money payable on the death of a party whose life he had feloniously taken." *New York Mut. Life Ins. Co. v. Armstrong* (1886), 117 U.S. 591, 600, 6 S.Ct. 877, 29 L.Ed. 997. But this fact begs the question: "Under federal law, do the proceeds go to the named contingent beneficiary or are they distributed in another manner?"

{¶ 38} Unfortunately, none of the federal cases dealing with how ERISA relates to slayer statutes answered this question because, for the most part, it did not matter. For instance, some of those cases involved insureds who did not name a contingent beneficiary, see, e.g., *H.E.B. Invest.*, 217 F.Supp.2d 759; *Addison, New Orleans Elec. Pension Fund v. Roberts Newman* (E.D.La.1992), 784 F.Supp. 1233, while others have concluded that they were not adequately briefed to resolve the issue. *Mendez–Bellido v. Bd. of Trustees of Div. 1181, A.T.U. New York Employees Pension Fund & Plan* (E.D.N.Y.1989), 709 F.Supp. 329, 333–334.

{¶ 39} In the absence of established federal common law on an issue, federal courts commonly borrow from state common law to determine the federal common law. *H.E.B. Investment*, 217 F.Supp.2d at 761; *Emard v. Hughes Aircraft Co.* (C.A.9 1998), 153 F.3d 949, 959–960. We recognize that some courts would award the policy proceeds to an innocent contingent beneficiary, see *Diep v. Rivas* (Md.App.2000), 357 Md. 668, 745 A.2d 1098, 1104; see, also, Schuman, Life Insurance and the Homicidal Beneficiary at 213; Sherman, Mercy Killing and the Right to Inherit at 853. But we disagree.

{¶ 40} The courts that award the proceeds to the contingent beneficiary speculate on the intent of the insured rather than applying the plain language of the contract. In doing so, those courts assume that the insured would have intended for proceeds to go to the contingent beneficiary if the insured was faced with that precise question. Schuman, Life Insurance and the Homicidal Beneficiary, 51 Fedn. Ins. & Corp. Counsel Q., at 2B. But courts have long recognized

that the manifest intention of contracting parties is found in the language they use in the contract. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11, citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus; *Neff,* 158 Ohio St. 45, 48 O.O. 24, 107 N.E.2d 100.

{¶ 41} In this case, we will apply the plain language of the contract rather than speculating about who Lubaina might have named as the beneficiary if she was murdered by the primary beneficiary. The contract is clear, and the fact that it does not address this situation does not make it ambiguous. We will not manufacture a result that may or may not be fair in a particular case. Contract law mandates that we follow the language of the contract, not our sense of what the parties might have intended.

{¶ 42} Under the plain language of the contract, Ibtisam cannot recover as the contingent beneficiary. The contingency arises only if Nawaz predeceases Lubaina, and that did not happen. The contract also contains a "No Surviving Beneficiary" clause. But that clause takes effect only when the insured neither names nor is survived by a beneficiary. That also has not happened. Accordingly, neither clause has been triggered, and the proceeds must be distributed through Lubaina's estate.

## Conclusion

{¶ 43} Under Ohio law, Ibtisam would receive all the life insurance proceeds, since courts would treat Nawaz as if he predeceased Lubaina. But ERISA preempts R.C. 2105.19, and federal common law, rather than Ohio statutory law, applies. Under the common law, we must apply the plain language of the contract. When applying that plain language, neither the contingent-beneficiary clause nor the no-surviving-beneficiary clause is triggered. Therefore, the proceeds must be awarded to Lubaina's estate.

{¶ 44} We can reach no final resolution of this case at this point in the proceedings. We do not know how the proceeds must be distributed by Lubaina's estate, so we cannot know how the proceeds should ultimately be distributed. The only thing we can say with certainty now is that the insurance proceeds at issue in this case should be distributed to Lubaina's estate and that the trial court erred by awarding them to Ibtisam. Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings.

*Judgment reversed
and cause remanded.*

GENE DONOFRIO and VUKOVICH, JJ., concur.