153 F.3d 949
 22 Employee Benefits Cas. 1765, 98 Cal. Daily
Op. Serv. 6468,
98 Cal. Daily Op. Serv. 6892,
98 Daily Journal D.A.R. 9544,
Pens. Plan Guide (CCH) P 23947E
Gary EMARD, Plaintiff-Appellant,
v.
HUGHES AIRCRAFT COMPANY, a corporation; Metropolitan Life
Insurance Company, a corporation; Alex Stencel,
Defendants-Appellees.
 No. 96-56584.
 United States Court of Appeals,
Ninth Circuit.
 Argued Feb. 2, 1998.
Submitted Feb. 12, 1998.
Decided Aug. 20, 1998.
 
 Gerald N. Shelley, Costa Mesa, California, for plaintiff-appellant.
 Ralph R. Loyd, Horwitz & Beam, Irvine, California, for defendant-appellee Alex Stencel.
 Appeal from the United States District Court for the Central District of California; Alicemarie H. Stotler, District Judge, Presiding. D.C. No. CV-95-00410-AHS.
 Before: PREGERSON, BEEZER and HALL, Circuit Judges.
 Opinion by Judge BEEZER; Partial Concurrence and Partial Dissent by Judge CYNTHIA HOLCOMB HALL.
 BEEZER, Circuit Judge:
 
 
 1
 Gary Emard ("Emard") filed an action in California state court seeking a declaration that, under California law, he is entitled to at least half of the proceeds of two term insurance policies insuring the life of his deceased wife, Ginger Emard ("Ginger"). The policies were issued as an employee benefit under the Hughes Aircraft Company plan, which is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. The action was removed to district court pursuant to 28 U.S.C. § 1441. The district court granted summary judgment in favor of Alex Stencel ("Stencel"), Ginger's former husband and the designated policy beneficiary, on the ground that ERISA preemption prohibits application of California's community property law. Emard appealed. We have jurisdiction. 28 U.S.C. § 1291. We hold that ERISA preemption does not bar the application of the California law on which Emard relies and that removal was improper. We reverse the judgment of the district court and remand with instructions to remand to state court.
 
 
 2
 * Ginger and Stencel married in 1975. Two children were born of their marriage. In 1981 Ginger was hired by Hughes Aircraft Company ("Hughes"). Incident to her employment she was entitled to a $50,000 Basic Life Insurance policy provided through Hughes' employee benefit program. This term life policy was issued by Metropolitan Life Insurance Company ("Met Life") and paid for by Hughes. On August 8, 1981, Ginger filled out a designation of beneficiary form naming "Aleksander Stencel, husband," as primary beneficiary and their two sons as contingent beneficiaries.
 
 
 3
 Ginger and Stencel divorced in 1985. The dissolution decree was silent as to Ginger's employee life insurance policy. In 1986 Ginger married Emard. Ginger's two sons from her marriage to Stencel lived with Ginger and Emard. One child was born of the Emard marriage. In 1988 Ginger purchased through Hughes an optional term life insurance policy ($138,000 coverage). Met Life issued the policy. The policy premiums were paid through after-tax payroll deductions and, later, by personal check. Ginger did not fill out a new designation of beneficiary form.
 
 
 4
 Ginger died intestate in January 1995. The designation of beneficiary form signed in 1981 remained the only document directing the distribution of the insurance proceeds. Emard brought a state court action naming Stencel, Hughes and Met Life as defendants and seeking a declaration that he is entitled, under California law, to all or part of the proceeds of Ginger's insurance policies. Hughes and Met Life removed the action to federal court pursuant to 28 U.S.C. § 1441, contending that ERISA preemption barred Emard's claims.[1] The district court granted summary judgment in favor of the defendants. This timely appeal followed.
 
 II
 
 5
 We review de novo a grant of summary judgment. See Babikian v. Paul Revere Life Ins. Co., 63 F.3d 837, 839 (9th Cir.1995). "We also review de novo the district court's interpretation and application of ERISA provisions and its determination that ERISA preempts a state law." Aloha Airlines, Inc. v. Ahue, 12 F.3d 1498, 1500 (9th Cir.1993). Removal is an issue of federal subject matter jurisdiction reviewed de novo. See Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 932 (9th Cir.1994). We "must consider whether federal jurisdiction exists, even if no objection is made to removal ... and even if both parties stipulate to federal jurisdiction." Rains v. Criterion Systems, Inc., 80 F.3d 339, 342 (9th Cir.1996) (citations omitted).
 
 III
 
 6
 This case was removed to the district court pursuant to 28 U.S.C. § 1441[2] (federal question jurisdiction). In general, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1546, 95 L.Ed.2d 55 (1987). Some federal statutes, though, "may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. at 63-64, 107 S.Ct. at 1546. Such complete preemption occurs under ERISA if (1) ERISA preempts the plaintiff's cause of action and (2) the cause of action falls within the scope of 29 U.S.C. § 1132(a). See Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 934 (9th Cir.1994).
 
 
 7
 Emard's state court complaint did not raise issues of federal law on its face, but instead relied solely on state law to establish Emard's rights to the proceeds of Ginger's two life insurance policies. A life insurance policy provided as part of an ERISA benefits package is part of an employee welfare benefit plan and is therefore governed by ERISA. See 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan"). Ginger's life insurance policies were provided as part of an ERISA benefits package and are therefore governed by ERISA. If Emard's claims to the proceeds of those policies are preempted by ERISA and fall within the scope of § 1132(a), then removal was proper. See Harris, 26 F.3d at 934. We must first determine, therefore, whether ERISA preemption bars application of the California law on which Emard relies.
 
 IV
 
 8
 By its terms, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a).[3] "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law...." Id. § 1144(c)(1).
 
 
 9
 Initially, the Supreme Court interpreted ERISA's preemption statute as creating a "deliberately expansive" preemption of state law. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Court stated that "a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."
 
 
 10
 Recently, "the Court has come to recognize that ERISA preemption must have limits when it enters areas traditionally left to state regulation." Operating Engineers Health and Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 677 (9th Cir.1998) (citing De Buono v. NYSA-ILA Medical and Clinical Svcs. Fund, 520 U.S. 806, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997)); see also Toumajian v. Frailey, 135 F.3d 648, 654 n. 3 (9th Cir.1998) ("Recently, the scope of this broad 'relate to' preemption was markedly narrowed.").
 
 
 11
 Under this new approach to preemption, courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term ['relate to'], and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The Court has also directed the courts to look "to the nature of the effect of the state law on ERISA plans." California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997). Taken together, these recent cases demonstrate, as Justice Scalia noted in his concurrence in Dillingham, that the Court now applies "ordinary field pre-emption, and, of course, ordinary conflict pre-emption" analysis to ERISA preemption questions. 117 S.Ct. at 843 (Scalia, J., concurring). See also John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank, 510 U.S. 86, 99, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) ("[W]e discern no solid basis for believing that Congress, when it designed ERISA, intended fundamentally to alter traditional preemption analysis.").
 
 
 12
 To guide our preemption analysis within the specific context of ERISA, we ask whether the state law at issue has (1) a "reference to" or (2) a "connection with" an ERISA plan. Operating Engineers, 135 F.3d at 677 (quoting District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 129, 113 S.Ct. 580, 583, and Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). A state law has "reference to" ERISA plans where it "acts immediately and exclusively upon ERISA plans, ... or where the existence of ERISA plans is essential to the law's operation." Dillingham, 519 U.S. at 117 S.Ct. at 838 (citations omitted). The California laws at issue here do not "act[ ] immediately and exclusively upon ERISA plans," nor is "the existence of ERISA plans ... essential to the [laws'] operation." See id. We therefore limit our analysis to the question whether those laws have "a connection with" ERISA benefit plans.
 
 V
 
 13
 Emard seeks first to have a constructive trust imposed on the proceeds of Ginger's life insurance policies. Under California law, "a constructive trust is an equitable remedy imposed where the defendant holds title or some interest in certain property which it is inequitable for him to enjoy as against the plaintiff." Kraus v. Willow Park Public Golf Course, 73 Cal.App.3d 354, 140 Cal.Rptr. 744, 756 (Cal.Ct.App.1977); see also Cal. Civ.Code § 2224.[4] Emard argues that Ginger's failure to alter the Hughes designation of beneficiary form was a mistake.[5] In the absence of that mistaken designation, he continues, California law would entitle him to all of the proceeds of the insurance policies. See Cal. Prob.Code § 6401(a). Emard concludes that it would be inequitable for Stencel to enjoy the proceeds and therefore that a constructive trust should be imposed, either while the proceeds are still retained by Met Life or after they are distributed to Stencel. Stencel counters that application of the California law on which Emard relies is barred by ERISA preemption.
 
 
 14
 Although the Supreme Court has not directly addressed this issue, its holdings in two cases lead us to the conclusion that ERISA preemption does not bar application of California's law of constructive trusts. The Court has held that ERISA does not preempt state laws permitting garnishment of an ERISA employee welfare benefit plan by a participant's creditor before distribution of the proceeds to the beneficiary. See Mackey v. Lanier Collection Agency & Svc., Inc., 486 U.S. 825, 837, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The Court has held further that there is "no meaningful distinction between a writ of garnishment and [a] constructive trust remedy." Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 372, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). Given these precedents, we conclude that ERISA does not preempt California law permitting the imposition of a constructive trust on insurance proceeds before their distribution to the designated beneficiary.
 
 
 15
 ERISA also would not prohibit the imposition of a constructive trust on insurance proceeds after their distribution to the beneficiary. See Guidry v. Sheet Metal Workers Nat'l Pension Fund, 39 F.3d 1078, 1081-83 (10th Cir.1994) (en banc) (Guidry II ) (ERISA does not prevent imposition of constructive trust on proceeds of pension plan after distribution to beneficiary). As the Tenth Circuit noted in Guidry II, Congress has prohibited attachment or garnishment of benefits paid out under the Social Security Act and the Veterans' Benefits Act. See id. at 1083 (citing Philpott v. Essex County Welfare Bd., 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (Social Security Act), and Porter v. Aetna Casualty & Sur. Co., 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) (Veterans' Benefits Act)).[6] Those statutory prohibitions, though, are explicit. See id. By contrast, ERISA lacks any provision prohibiting garnishment or attachment of benefits after they have been received by the beneficiary. See id. The absence of such language from ERISA indicates that Congress did not intend such a prohibition here. See id.[7]
 
 
 16
 We agree with the Tenth Circuit's analysis. ERISA is designed to ensure that benefits are paid out. It is silent as to the disposition of those funds after their receipt by the beneficiary. ERISA does not preempt California law permitting the imposition of a constructive trust on insurance proceeds after their distribution to the designated beneficiary.
 
 VI
 
 17
 In the alternative, Emard contends that, even if Ginger intended to maintain Stencel as the beneficiary of the two Hughes insurance policies, California's law of community property entitles Emard to half of the insurance proceeds.
 
 
 18
 Under California law, "[g]enerally, all property acquired by a spouse during marriage before separation is community property." Marriage of Lehman, 18 Cal.4th 169, 74 Cal.Rptr.2d 825, 828, 955 P.2d 451 (Cal.1998) (citing Cal. Family Code §§ 760, 771). Community property includes all property obtained through the exercise of a spouse's labor and skills. See Weinberg v. Weinberg, 67 Cal.2d 557, 63 Cal.Rptr. 13, 432 P.2d 709, 713 (Cal.1967). Because a fringe benefit is part of an employee's earnings, a fringe benefit is community property to the extent that it is earned through employment during marriage. See Marriage of Brown, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 565 (1976).
 
 
 19
 A life insurance policy obtained with community funds is an asset of the community. See Life Ins. Co. of North America v. Cassidy, 35 Cal.3d 599, 200 Cal.Rptr. 28, 676 P.2d 1050, 1053 (1984) (citing Patillo v. Norris, 65 Cal.App.3d 209, 135 Cal.Rptr. 210, 215 (Cal.App.1976)); see also Marriage of Harrison, 179 Cal.App.3d 1216, 225 Cal.Rptr. 234, 239 (Cal.App.1986) (life insurance paid for by an employer as a benefit of employment is community property). A spouse's community interest in the proceeds of a policy obtained with community funds "may not be defeated by a gift of the policy proceeds to a third party named as beneficiary without the spouse's consent." Cassidy, 200 Cal.Rptr. 28, 676 P.2d at 1053. The surviving spouse is therefore entitled to set aside his or her community share in life insurance proceeds even where the decedent spouse designated another person as beneficiary. See id.; Tyre v. Aetna, 54 Cal.2d 399, 6 Cal.Rptr. 13, 353 P.2d 725, 728-29 (1960).[8] This rule applies to term life insurance policies as well as "whole life" policies. See Estate of Logan, 191 Cal.App.3d 319, 236 Cal.Rptr. 368, 372 (Cal.App.1987); Lorenz v. Lorenz, 146 Cal.App.3d 464, 194 Cal.Rptr. 237, 239 (Cal.App.1983) (citing Biltoft v. Wootten, 96 Cal.App.3d 58, 157 Cal.Rptr. 581 (1979), and Patillo, 135 Cal.Rptr. at 215).
 
 
 20
 Relying on these principles of California law, Emard argues that he is entitled to set aside his community share in the proceeds of the Met Life policies insuring Ginger's life. The district court held that ERISA preemption bars application of California's law of community property where that law would require distribution of ERISA insurance proceeds contrary to the participant's designation of beneficiary. We disagree.
 
 
 21
 * We have not previously addressed the question whether ERISA preemption bars application of state law that would require the distribution of ERISA insurance proceeds to a person other than the designated beneficiary.[9]
 
 
 22
 The circuit opinions that have addressed this issue have relied on the Supreme Court's previous analysis of ERISA's preemption language. Using that earlier analysis, those opinions have generally held that the state law provisions "relate to" ERISA and are therefore preempted. See Metropolitan Life Ins. Co. v. Pressley, 82 F.3d 126, 129 (6th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997); Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 559-60 (4th Cir.1994); Brandon v. Travelers Ins. Co., 18 F.3d 1321, 1325 (5th Cir.1994); Moore v. Philip Morris Cos., 8 F.3d 335, 341-42 (6th Cir.1993); Krishna v. Colgate Palmolive Co., 7 F.3d 11, 15-16 (2d Cir.1993); Metropolitan Life Ins. Co. v. Hanslip, 939 F.2d 904, 906 (10th Cir.1991); Brown v. Connecticut General Life Ins. Co., 934 F.2d 1193, 1195 (11th Cir.1991); McMillan v. Parrott, 913 F.2d 310, 311 (6th Cir.1990); MacLean v. Ford Motor Co., 831 F.2d 723, 726-27 (7th Cir.1987). Cf. Equitable Life Assur. Soc. v. Crysler, 66 F.3d 944, 948-49 (8th Cir.1995) (looking to state law for guidance in fashioning federal common law); Lyman Lumber Co. v. Hill, 877 F.2d 692, 693 (8th Cir.1989) (same).
 
 
 23
 Under the majority approach of those opinions, application of California law concerning the designation of a beneficiary has a connection with ERISA and would therefore be preempted. Those opinions, though, rely on the Supreme Court's former approach to ERISA preemption, and their analyses therefore provide us little guidance. Applying the preemption approach required by the Court's recent cases, we hold that ERISA does not preempt California's law of community property in this instance.
 
 B
 
 24
 As noted in section IV, supra, the Supreme Court's recent cases apply the principles of conflict and field preemption. See California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 117 S.Ct. 832, 843, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring). Under this approach we ask first whether application of California law would conflict with ERISA. See Boggs v. Boggs, 520 U.S. 833, 117 S.Ct. 1754, 1760, 138 L.Ed.2d 45 (1997). This is itself a two-step analysis in which we ask (1) whether California law conflicts with any specific provision of ERISA and then (2) whether application of California law would frustrate Congress' purposes in enacting ERISA. Having proceeded through the conflict analysis, we ask next whether Congress has indicated an intent to occupy the field so completely that California law is necessarily preempted. See id. 520 U.S. at ----, 117 S.Ct. at 1760; Dillingham, 117 S.Ct. at 843 (Scalia, J., concurring).
 
 
 25
 * No ERISA provision expressly governs disputes between claimants to insurance proceeds. See Equitable Life Assur. Soc. v. Crysler, 66 F.3d 944, 948 (8th Cir.1995) (citing cases). We must determine whether any ERISA provisions implicitly conflict with California's law of community property.
 
 
 26
 (a)
 
 
 27
 Stencel contends that California's community property law conflicts with ERISA's requirement that "a fiduciary shall discharge his duties with respect to a plan ... in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1). In Stencel's view, Ginger's designation of beneficiary is one of the "documents or instruments governing the plan," and the plan administrator must distribute the insurance proceeds in accordance with that designation. California's law of community property, Stencel concludes, would require that the plan administrator distribute the insurance proceeds in contravention of one of the "documents or instruments governing the plan" and is therefore preempted.
 
 
 28
 Stencel is mistaken. Section 1104(a)(1) "does not prescribe how to resolve conflicting claims" to welfare plan benefits. Crysler, 66 F.3d at 948. The phrase "documents and instruments governing the plan" does not refer to an individual participant's designation of a beneficiary: such a designation does not "govern[ ] the plan," but merely reflects the participant's intent regarding distribution of the proceeds. Section 1104(a)(1) thus does not preempt California's law of community property, which concerns only the rights to the proceeds and not the administration of the plan.
 
 
 29
 (b)
 
 
 30
 Similarly, Emard's state law causes of action are not preempted by ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1). That section provides, in pertinent part, that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan...." A state law cause of action that falls within the scope of § 1132(a) is preempted. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).
 
 
 31
 We have held that a person claiming to be a beneficiary under state law has standing to bring a claim pursuant to § 1132(a). See Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1266-67 (9th Cir.1992); but see Boggs, 520 U.S. at ----, 117 S.Ct. at 1763-65 (imposing a narrow definition of "beneficiary" in a pension benefits case). But Cripps does not stand for the proposition that a suit to obtain proceeds of a life insurance policy otherwise governed by ERISA necessarily falls under § 1132(a). An action falls within the scope of that section only where the plaintiff seeks "to recover benefits due to him under the terms of his plan." Emard's claims do not implicate the terms of the plan. There is no dispute regarding the amount or nature of the benefit or whether the benefit is properly payable. The dispute concerns only the ultimate ownership of the proceeds. That dispute can be decided without reference to the terms of the plan or the provisions of ERISA. Indeed, neither Hughes nor Met Life need be involved in the action beyond the simple matter of distributing the proceeds to the appropriate recipient or depositing them with the court.
 
 
 32
 In enacting ERISA, Congress intended to safeguard the rights of plan participants and beneficiaries as against employers, insurers and administrators of employee benefit plans. See 29 U.S.C. § 1001 (setting forth Congress' findings and declaration of policy). ERISA therefore preempts state laws that concern those matters. But we see no indication that Congress intended to safeguard an individual beneficiary's rights to the proceeds of an ERISA insurance plan as against another person claiming superior rights, under state law, to those proceeds. Absent specific contrary provisions in ERISA, an action intended only to enforce such individual rights against a beneficiary does not fall within the scope of § 1132(a), and state laws on which such an action relies are not barred by ERISA preemption.
 
 
 33
 (c)
 
 
 34
 California's law of community property also does not, in this instance, conflict with any other specific ERISA provisions. Cf. Boggs, 520 U.S. at ----, 117 S.Ct. at 1761-66 (Louisiana's law of community property conflicts with, and therefore is preempted by, ERISA's survivor's annuity and anti-alienation provisions and by ERISA's definition of "beneficiary"). We therefore turn to the next step of analysis.
 
 2
 
 35
 In undertaking the second step of the conflict analysis, we ask whether California's law of community property has a connection with ERISA such that application of the state law would frustrate ERISA's purposes. See id. at 1760; Operating Engineers Health and Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 678 (9th Cir.1998). To help determine whether a state law "has a connection with" an ERISA benefit plan, we consider four factors set out in Aloha Airlines, Inc. v. Ahue, 12 F.3d 1498, 1504 (9th Cir.1993):
 
 
 36
 (1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;
 
 
 37
 (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;
 
 
 38
 (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and
 
 
 39
 (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee.
 
 
 40
 Quoted in Operating Engineers, 135 F.3d at 678.
 
 
 41
 The first three Aloha factors are not at issue. California's community property law does not "regulate[ ] the types of benefits of ERISA employee welfare benefit plans"; it does not "require[ ] the establishment of a separate employee benefit plan"; and it does not "impose[ ] reporting, disclosure, funding, or vesting requirements for ERISA plans." See Aloha, 12 F.3d at 1504. Stencel argues, though, that California law does "regulate[ ] certain ERISA relationships" by altering the administrative process for plans in California and by altering the designation of beneficiaries. We disagree.
 
 
 42
 (a)
 
 
 43
 Stencel argues first that application of California's community property law would frustrate Congress' intent to establish a uniform process for administering employee benefit plans. Stencel relies in part on Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). The Court there stated:
 
 
 44
 An employer that makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements. The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States. A plan would be required to keep certain records in some States but not in others; to make certain benefits available in some States but not in others; to process claims in a certain way in some States but not in others; and to comply with certain fiduciary standards in some States but not in others.
 
 
 45
 Id. See also Moore v. Philip Morris Cos. Inc., 8 F.3d 335, 341-42 (6th Cir.1993) (a Kentucky domestic relations statute that would have required forfeiture of an ERISA insurance policy by a deserting spouse would impose administrative burdens on the ERISA plan and is therefore preempted).
 
 
 46
 As Fort Halifax makes clear, ERISA preempts state regulations that affect the administration of plans. See Fort Halifax, 482 U.S. at 9, 107 S.Ct. 2216. But the state law at issue here does not affect the administration of plans; instead, it affects merely the ultimate ownership of distributed benefits. Under California law an ERISA administrator may pay insurance proceeds to the named beneficiary unless a contending claimant properly notifies the plan of his or her claim to the proceeds. See Cal. Family Code § 755(b). In the absence of such a claim, payment to the named beneficiary absolves the plan of liability for further claims. See Id. California law therefore does not alter plan administration. The plan administrator need not maintain different records in California than in other states; similarly, the administrator has no duty under California law to determine whether someone other than the named beneficiary has a claim to the proceeds. Cf. Fort Halifax, 482 U.S. at 9, 107 S.Ct. 2216. Instead, the administrator may simply disburse the proceeds in accordance with the participant's designation of beneficiary. If a contending claim is made before disbursement, the administrator can leave the determination of the proper recipient of the proceeds to the parties through the application of state property law, just as Hughes and Met Life have done in this instance.
 
 
 47
 We recognize that, in the circumstances of a case such as this, the plan administrator must take certain steps to answer the complaint and either disburse the disputed funds to the prevailing claimant or deposit the funds with the court. But this burden on the administrator is too slight to overcome the presumption against preemption of state family and family property law.[10] See Boggs, 117 S.Ct. at 1760; Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); see also De Buono v. NYSA-ILA Medical and Clinical Svcs. Fund, 520 U.S. 806, 117 S.Ct. 1747, 1752, 138 L.Ed.2d 21 (1997) (ERISA does not preempt generally applicable state laws "that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute") (citing New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 668, 115 S.Ct. 1671, 1683, 131 L.Ed.2d 695 (1995), and Dillingham, 519 U.S. at ----, 117 S.Ct. at 841-42); District of Columbia v. Greater Washington Board of Trade, 506 U.S. 125, 130 n.1, 113 S.Ct. 580, 583 n.1, 121 L.Ed.2d 513 (1992) (state law is not preempted if it "has only a 'tenuous, remote, or peripheral' connection with covered plans") (citations omitted).
 
 
 48
 The flaw in Stencel's argument is clearer in two analogous situations. ERISA contains no provision regarding the distribution of benefits to a named beneficiary who kills a plan participant in order to obtain those benefits. Given the analysis offered by Stencel and by other circuits, a state slayer statute would not apply in such a case.[11] Unless state law was borrowed to fashion federal common law, the plan administrator would be required to distribute the insurance proceeds to the slayer. Similarly, unless state law was borrowed, Stencel's approach to preemption would require a plan administrator to distribute insurance proceeds to a designated beneficiary even though that beneficiary obtained the designation through fraud or undue influence. Cf. Free v. Bland, 369 U.S. 663, 670, 82 S.Ct. 1089, 1094, 8 L.Ed.2d 180 (1962) (regulations governing U.S. savings bonds "are not intended to be a shield for fraud"). Congress could not have intended that ERISA displace state law in such instances. Similarly, it did not intend the preemption of state law for which Stencel argues here.
 
 
 49
 (b)
 
 
 50
 Stencel argues further that California's community property law regulates ERISA relationships by changing the identity of ERISA beneficiaries. See Aloha, 12 F.3d at 1504. He is mistaken.
 
 
 51
 A state's community property law can regulate ERISA relationships by changing the identity of an ERISA beneficiary. See Boggs, 520 U.S. at ----, 117 S.Ct. at 1764-65. In Boggs, the application of Louisiana's law of community property would have required that pension plan assets be administered for the benefit of persons not designated as beneficiaries. See id. at 1765. By contrast, this case concerns rights to a one-time distribution of insurance proceeds. The determination of the rights to the proceeds will have no effect on the plan itself. The employer, plan trustee and plan administrator are still bound by the same fiduciary obligations and can fulfill those obligations by administering the plan in compliance with the plan documents and the provisions of ERISA. The relationships between ERISA entities remains unchanged. Because California's community property law does not affect the relationships between ERISA entities, it does not conflict with Congress' purpose in enacting ERISA and is not preempted.
 
 
 52
 (c)
 
 
 53
 As applied in this instance, California's community property law does not "regulate[ ] the types of benefits of ERISA employee benefit plans"; does not "require[ ] the establishment of a separate employee benefit plan"; does not "impose[ ] reporting, disclosure, funding, or vesting requirements for ERISA plans"; and does not "regulate[ ] ... ERISA relationships." See Aloha, 12 F.3d at 1504. California's community property law therefore does not have a "connection with" an ERISA plan. Nor does it otherwise conflict with Congress' purposes in enacting ERISA. We thus turn to the final step of the preemption analysis.
 
 3
 
 54
 In continuing our preemption analysis, we ask whether Congress has completely occupied the field such that all state laws are preempted. See Boggs, 520 U.S. at ----, 117 S.Ct. at 1760; Dillingham, 519 U.S. at ----, 117 S.Ct. at 843 (Scalia, J., concurring).
 
 
 55
 We recently held that "ERISA plans no longer have a Midas touch that allows them to deregulate every product they choose to buy as part of their employee benefit plan." Washington Physicians Svc. Assoc. v. Gregoire, 147 F.3d 1039, 1045 (June 18, 1998), petition for reh'g and suggestion for reh'g en banc filed July 10, 1998 (citing Travelers, 514 U.S. at 661, 115 S.Ct. 1679-80). Similarly, ERISA's preemption clause no longer has the power to transmute into a federal question every issue that brushes against the periphery of an ERISA plan. We must identify instead Congress' purposes in enacting ERISA to determine in what fields state law is preempted. See Travelers, 514 U.S. at 656, 115 S.Ct. 1671.
 
 
 56
 In enacting ERISA, Congress intended to occupy the field of regulation of employee welfare and pension benefit plans. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). This occupation is complete, however, only as to regulation of ERISA plans as plans. See Fort Halifax, 482 U.S. at 11, 107 S.Ct. 2211 (noting that "Congress pre-empted state laws relating to plans, rather than simply to benefits ") (emphasis in original). As applied in this case, California's law of community property has no effect on the Hughes plan as such: it does not affect the duties of the employer or the plan entity, nor does it alter the rights of participants and beneficiaries as against the other plan entities. Because California's community property law does not regulate ERISA plans as such, its application is not barred by field preemption.
 
 C
 
 57
 We reiterate that this dispute concerns the rights only of individual persons to insurance proceeds. Over the course of several decades, state legislative enactments and judicial decisions have established rules governing the distribution of insurance proceeds in such disputes. See section VI.A, supra (citing cases regarding ERISA preemption of state laws governing distribution of insurance proceeds). These rules represent the belief of state decision makers that equity sometimes outweighs the mechanical application of a designation of beneficiary. Many insurance policies are now provided by employers and are therefore governed by ERISA. If ERISA governs the right to insurance proceeds, then it preempts all state laws permitting alternate distribution of insurance proceeds.
 
 
 58
 We believe that Congress did not preempt state rules in this regard. State community property laws "implement policies and values lying within the traditional domain of the States." Boggs v. Boggs, 520 U.S. 833, 117 S.Ct. 1754, 1760, 138 L.Ed.2d 45 (1997). The courts therefore require that "State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (citing United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966)); see also Boggs, 520 U.S. at ----, 117 S.Ct. at 1760 (citing Hisquierdo with approval). California's law of community property does not do major damage to a clear and substantial federal interest. Its application is not barred by ERISA preemption.
 
 VII
 
 59
 Having determined that ERISA does not preempt California's law of constructive trusts or of community property, we now return to the issue whether removal was proper.
 
 
 60
 Emard's state court action was removed to district court pursuant to 28 U.S.C. § 1447 (federal question jurisdiction). Where federal jurisdiction is premised on the existence of a federal question, removal is proper only (1) where a federal question appears on the face of the plaintiff's well-pleaded complaint or (2) where federal law so completely preempts the plaintiff's state law cause of action that the complaint necessarily arises under federal law. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Emard's complaint did not present a federal cause of action on its face, and federal law did not preempt Emard's state law causes of action. The action was not removable.
 
 
 61
 Emard failed to object to removal. Where a litigant fails to object to removal and there has been a final judgment on the merits, we will not order the remand of an improvidently removed case if, at the entry of judgment, "the federal district court would have had original jurisdiction of the case had it been filed in that court." Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972); see also Local Union 598 v. J.A. Jones Constr. Co., 846 F.2d 1213, 1215 (9th Cir.1988) (Grubbs doctrine applies where a district court has entered summary judgment disposing of the merits of a case).
 
 
 62
 The Grubbs doctrine does not apply, though, where a circuit court reverses a district court's grant of summary judgment such that there has been no judgment on the merits. See Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir.1993). In such an instance, an improperly removed action must be remanded to state court. Id. Because we reverse the judgment of the district court, there has been no judgment on the merits. This case was improperly removed and must be remanded to state court. See id.; Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 934 (9th Cir.1994).
 
 VIII
 
 63
 The dispute in this case concerns only the rights of individual persons to the proceeds of life insurance policies. Its resolution will not affect any right or procedure addressed by Congress within the framework of ERISA. ERISA preemption does not prohibit application in this instance of California's law of constructive trusts or its law of community property. Emard's complaint did not raise a federal question on its face, and his causes of action were not preempted by ERISA. Removal was improper. We reverse the judgment of the district court and remand with instructions to remand to state court.
 
 
 64
 REVERSED AND REMANDED.
 
 
 65
 CYNTHIA HOLCOMB HALL, Circuit Judge, concurring in part and dissenting in part.
 
 
 66
 I agree with the majority that ERISA would not prevent imposition of a constructive trust in the circumstances of this case. I write separately, however, to express my disagreement with its treatment of California's law of community property. Because the application of community property law would require the ERISA plan administrator to distribute the proceeds of Ginger's life insurance policy to someone other than the named beneficiary, ERISA preemption should apply.
 
 
 67
 The preemption question raised in this case has implications well beyond the community property context. It is not infrequently alleged, for instance, that beneficiary designations under ERISA welfare plans are altered by state laws governing domestic relations, wills, trusts, or estates. In almost every such case, our sister circuits have held that ERISA preempts state law. See, e.g., Mattei v. Mattei, 126 F.3d 794, 796 n. 2, 809 (6th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); Brandon v. Travelers Ins. Co., 18 F.3d 1321, 1325 (5th Cir.1994); Krishna v. Colgate Palmolive Co., 7 F.3d 11, 15 (2nd Cir.1993); Metropolitan Life Ins. Co. v. Hanslip, 939 F.2d 904, 906 (10th Cir.1991); MacLean v. Ford Motor Co., 831 F.2d 723, 727 (7th Cir.1987).[1] These cases might be distinguishable in light of recent Supreme Court precedent if the courts had simply speculated that state laws that alter beneficiary designations, "relate to" ERISA in some intangible fashion. However, the conflict between such state laws and ERISA is much more tangible and direct.
 
 
 68
 Most importantly, state laws that alter beneficiary designations impose obligations on plan administrators that are inconsistent with the obligations imposed by ERISA. Under 29 U.S.C. § 1104(a)(1)(D), plan administrators must discharge their duties "in accordance with the documents and instruments governing the plan." Only the Eighth Circuit has suggested that beneficiary designations are not among the documents and instruments governing a plan. See Crysler, 66 F.3d at 948 (holding that § 1104(a)(1)(D) provides no more than "important guidance" in settling beneficiary disputes). The majority of courts to consider the issue have held or assumed that § 1104(a)(1)(D) established a "clear mandate" that plan administrators follow plan documents, including beneficiary designations, in identifying the proper beneficiary. Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 420 (6th Cir.1997). I agree.[2]
 
 
 69
 Even if there were no direct conflict between California's law of community property and a specific ERISA provision, a somewhat lesser conflict exists between the application of state law and "the intent of Congress that ERISA plans be uniform in their interpretation and simple in their application." McMillan v. Parrott, 913 F.2d 310, 312 (6th Cir.1990). Requiring plan administrators to look not only to formal beneficiary designations, but also to state law, before disbursing benefits would undermine the efficient functioning of ERISA plans and the certainty of both plan administrators and designated beneficiaries as to who is entitled to benefits. The burden on plan administrators is not so onerous if plan administrators are required to do no more than initiate interpleader proceedings in the event of conflicting claims. Yet, even this burden might, in the aggregate, discourage the use of interpleader or similar procedural devices, disrupt the uniform administration of ERISA plans, and perhaps lead employers to reduce plan benefits or eliminate some benefits altogether. See Krishna, 7 F.3d at 16.
 
 
 70
 I am not persuaded by the majority's slayer statute analogy. While no circuit has decided whether state slayer statutes are preempted by ERISA, I would not hesitate to find preemption in the bulk of cases in which a slayer statute would require an ERISA plan administrator to distribute benefits to someone other than the named beneficiary. Moreover, neither of the district court cases that the majority cites for the proposition that slayer statutes are not preempted supports a similar ruling in the community property context. In New Orleans Elec. Pension Fund v. DeRocha, 779 F.Supp. 845, 850 (E.D.La.1991), the court's ruling that ERISA does not preempt Louisiana's slayer statute hinged on application of ERISA's savings clause for state insurance law. Id.; see 29 U.S.C. § 1144(b)(2)(A). Unlike Louisiana's slayer statute, which was expressly limited to the insurance context, see DeRocha, 779 F.Supp. at 850, California's law of community property cannot avoid preemption under ERISA's savings clause.
 
 
 71
 In Mendez-Bellido v. Board of Trustees of Div. 1181, A.T.U. New York Employees Pension Fund and Plan, 709 F.Supp. 329 (E.D.N.Y.1989), the court found no preemption of New York's slayer statute, this time without resorting to ERISA's savings clause. Id. at 331. It was important to this court's decision, however, that "state laws prohibiting murderers from receiving death benefits are relatively uniform [such that] there is little threat of creating a 'patchwork scheme of regulation.' " Id. at 332 (footnote and citation omitted). Because state laws governing domestic relations and testamentary transfers are far more varied, and would thus undermine Congress' intent that ERISA plans be uniform in their interpretation and simple in their application, Mendez-Bellido, like DeRocha, actually supports finding preemption in the present community property context.[3]
 
 
 72
 Because application of California's law of community property would create a conflict with a specific provision of ERISA and with Congress' objectives in enacting ERISA, the district court did not err in deeming it preempted.[4]
 
 
 
 [1]
 Hughes and Met Life have otherwise taken no stand on the merits of Emard's claims. As of March 18, 1998, the policy proceeds were still in the possession and control of Met Life
 
 
 [2]
 Section 1441 provides in relevant part that
 (a) ... any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....
 (b) Any civil action of which the district courts have original jurisdiction founded on a claim arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
 
 
 [3]
 ERISA specifically exempts from preemption any state law that "regulates insurance." 29 U.S.C. § 1144(b)(2)(A). "[I]n order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The California law of constructive trusts and community property is not specifically directed toward the insurance industry and therefore is not saved by § 1144(b)(2)(A)
 
 
 [4]
 "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Cal. Civ.Code § 2224
 
 
 [5]
 Emard also contends that, pursuant to Cal. Family Code § 1100(e), he is entitled to the insurance proceeds because Ginger's designation of Stencel as beneficiary constituted a breach of the fiduciary duty owed by one spouse to another under Cal. Family Code § 1100(e). But see Polk v. Polk, 228 Cal.App.2d 763, 39 Cal.Rptr. 824, 835 (Cal.App.Ct.1964) (surviving spouse is entitled to set aside only half of the proceeds of an insurance policy obtained with community property); see also discussion infra, section VI (reviewing California's law of community property and the designation of beneficiaries of insurance policies)
 
 
 [6]
 See also Ridgway v. Ridgway, 454 U.S. 46, 60-61, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981) (state law permitting imposition of constructive trust on proceeds of insurance paid under Servicemen's Group Life Insurance Act (SGLIA) preempted by contrary provision in SGLIA)
 
 
 [7]
 The Eighth Circuit has rejected the imposition of a constructive trust on proceeds of pension and profit sharing plans. See National Automobile Dealers and Assocs. Retirement Trust v. Arbeitman, 89 F.3d 496, 502 (8th Cir.1996). In Arbeitman, a former wife argued that the plan participant's subsequent wife waived her right to a survivor's annuity by executing a prenuptial agreement. See id. at 501-02. The Eighth Circuit held that the prenuptial agreement failed to satisfy ERISA's statutory requirements for waiver of a spouse's rights to plan benefits. See id. at 502. The opinion does not discuss the distinction between imposition of a constructive trust on benefits before distribution and imposition after distribution. See id. Moreover, in Arbeitman the imposition of a constructive trust would have contradicted specific statutory requirements. Id. at 502 (citing 29 U.S.C. § 1055(c)). By contrast, ERISA does not contain an explicit statutory prohibition against alienation of welfare benefit proceeds. Arbeitman is not on point, and we decline to apply its analysis to the distinct issue of welfare benefit plans
 
 
 [8]
 See also Cal. Family Code § 1100(b) ("A spouse may not make a gift of community personal property, or dispose of community personal property for less than fair and reasonable value, without the written consent of the other spouse."); Cal. Prob.Code § 5020 ("A provision for a nonprobate transfer of community property on death executed by a married person without the written consent of the person's spouse ... is not effective as to the nonconsenting spouse's interest in the property...."); Cal. Prob.Code § 5021(a) ("In a proceeding to set aside a nonprobate transfer of community property on death made pursuant to a provision for transfer of the property executed by a married person without the written consent of the person's spouse, the court shall set aside the transfer as to the nonconsenting spouse's interest in the property, subject to terms and conditions or other remedies that appear equitable under the circumstances of the case, taking into account the rights of all interested persons.")
 
 
 [9]
 Cripps v. Life Ins. Co. of North America, 980 F.2d 1261 (9th Cir.1992), presented facts similar to those at issue here. In Cripps, a decedent's surviving spouse claimed that under California law she was entitled to at least a portion of the decedent's ERISA insurance proceeds even though another person (the decedent's first wife) was the designated beneficiary. See Id. at 1263. We held that the second wife, as a person claiming to be a beneficiary of an ERISA plan insurance policy, had standing to bring an action under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). See Id. at 1267. We also held that a default judgment in favor of the second wife was legally insupportable because her complaint had not made out a claim for relief under California law. See Id. at 1268. We did not decide whether ERISA preempted the California law on which the second wife relied. See id. Cripps therefore does not provide guidance for our decision in this case. We note further that our decision in Cripps has implicitly been called into doubt by Boggs v. Boggs, 520 U.S. 833, 117 S.Ct. 1754, 1763, 138 L.Ed.2d 45 (1997) ("ERISA confers beneficiary status on a nonparticipant spouse ... in only narrow circumstances delineated by its provisions.")
 In Ablamis v. Roper, 937 F.2d 1450, 1458-59 (9th Cir.1991), we held that ERISA's anti-alienation provision preempts California community property law to the extent that California law would permit a predeceasing nonemployee spouse to bequeath a portion of her husband's pension benefits. Ablamis concerned rights to pension benefits governed by specific ERISA provisions. By contrast, this case concerns rights to welfare benefits not governed by specific ERISA provisions. Ablamis therefore does not provide substantial guidance for our decision in this case.
 
 
 [10]
 Since 1991, the Hughes designation of beneficiary form has contained the following language: "If you reside in California or Arizona, your spouse's consent will be required if you designate someone other than your spouse to receive more than fifty percent of your life insurance benefits...." The Hughes plan administrators have voluntarily shouldered the burden at issue here. That fact suggests that they do not find this burden excessive
 
 
 [11]
 As of 1993, forty-four states and the District of Columbia had slayer statutes; four other states applied a common law bar, and matters were unclear in the other two jurisdictions. Jeffrey G. Sherman, Mercy Killing and the Right to Inherit, 61 U. Cin. L.Rev. 803, 805, 876 n. 12 (1993)
 Two district courts have held that state slayer statutes are not preempted by ERISA. New Orleans Elec. Pension Fund v. DeRocha, 779 F.Supp. 845, 850 (E.D.La.1991); Mendez-Bellido v. Board of Trustees of Div. 1181, A.T.U. New York Employees Pension Fund and Plan, 709 F.Supp. 329, 331 (E.D.N.Y.1989). In Mendez-Bellido, the district court found no preemption of New York's slayer statute in part because "state laws prohibiting murderers from receiving death benefits are relatively uniform [such that] there is little threat of creating a 'patchwork scheme of regulation.' " 709 F.Supp. at 332 (quoting Fort Halifax, 482 U.S. at 11, 107 S.Ct. 2211). In fact, slayer statutes "vary considerably from jurisdiction to jurisdiction." Sherman, Mercy Killing, 61 U. Cin. L.Rev. at 876 n. 12. Even if slayer statutes are relatively uniform, application of a slayer statute would require the plan administrator to determine, according to state law, whether ERISA insurance proceeds should be distributed to a person other than the named beneficiary. Such a burden is too slight to overcome the presumption against preemption of state law. See De Buono, 117 S.Ct. at 1752; Hisquierdo, 439 U.S. at 581, 99 S.Ct. 802.
 Metropolitan Life Ins. Co. v. Hanslip, 939 F.2d 904 (10th Cir.1991), has been cited, incorrectly, for the proposition that ERISA preempts state slayer statutes. See Grayson M.P. McCouch, Will Substitutes Under the Revised Uniform Probate Code, 58 Brook. L.Rev. 1123, 1194 n. 235 (1993). In Hanslip, the Tenth Circuit held that ERISA preempted an Oklahoma statute revoking on divorce the designation of the decedent's former spouse as beneficiary of a life insurance policy. Hanslip, 939 F.2d at 906. Hanslip does not concern a slayer statute.
 "[T]he IRS has recognized that [an ERISA] plan must conform to a state's 'slayer' statute, and not pay benefits to the person who murdered the participant, even if that person is named as the beneficiary." Natalie B. Choate, Qualified Plan and IRA Distributions: The Year of Death, CA 43 ALI-ABA 191, 196 (1996) (citing IRS Letter Ruling 8908063 (11/30/88)). This provision is external to ERISA. It does not alter the analysis in the text above.
 
 
 [1]
 At least one district court has disagreed. See Metropolitan Life Ins. Co. v. Pearson, 848 F.Supp. 1326, 1333 (E.D.Mich.1994). While the Eighth Circuit, in Equitable Life Assurance Society v. Crysler, 66 F.3d 944 (8th Cir.1995), found no conflict between a state divorce law and ERISA, it recognized that "ERISA preemption makes the designation of plan beneficiaries ... [a] question[ ] of federal law," and the court ultimately utilized the state law only in fashioning federal common law. Id. at 948-49
 
 
 [2]
 In Crysler, the Eighth Circuit reasoned that because "no ... ERISA provision ... expressly governs th[e] dispute between benefit claimants," state law may be used to resolve conflicting claims. 66 F.3d at 948. Yet, the very fact that § 1104(a)(1) includes a blanket requirement that plan administrators distribute benefits to the named beneficiary and says nothing about conflicting claims should make an administrator's obligations when conflicting claims arise abundantly clear--distribute benefits to the named beneficiary. The absence of any express provision dealing with conflicting claims thus bolsters, rather than weakens, the majority position that the beneficiary designation on file is controlling
 It is also worth noting that ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). This definition does not reference state laws governing domestic relations, wills, trusts, or estates.
 
 
 [3]
 When ERISA preempts a state statute, we generally resort to federal common law in place of the preempted state law. See McClure v. Life Ins. Co. of North America, 84 F.3d 1129, 1133 (9th Cir.1996). Both the DeRocha and Mendez-Bellido courts looked to federal common law as an alternative basis for denying benefits to a slayer in the event ERISA did preempt state law. DeRocha, 779 F.Supp. at 850; Mendez-Bellido, 709 F.Supp. at 332-33. While federal common law may preclude a murderer from recovering under his victim's insurance policy or will, there is no federal common law that would require the plan administrator in the present case to distribute benefits to anyone other than the named beneficiary
 
 
 [4]
 Because ERISA preempts the application of California community property law, federal subject matter jurisdiction exists. See Buster v. Greisen, 104 F.3d 1186, 1188 (9th Cir.) (finding "complete preemption" of a state law claim, and thus a basis for federal jurisdiction, "only when [ERISA] both preempts the claim ... and displaces the claim with its civil enforcement provision, 29 U.S.C. § 1132(a)"), cert. denied, --- U.S. ----, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997); Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1266-67 (9th Cir.1992)(holding that a plaintiff's claim that she is a beneficiary by virtue of state law presents a federal question under § 1132(a))